THE STANDARD DISTILLING AND DISTRIBUTING COMPANY, Appellee, *vs.* THE SPRINGFIELD COAL MINING AND TILE COMPANY *et al.* Appellants.

*Opinion filed April 23, 1909.*

1. CORPORATIONS—*section 25 of Corporation act does not limit creditors to suits against stockholders.* Section 25 of the Corporation act, relating to corporations which dissolve or cease doing business leaving debts unpaid, is designed to aid creditors in the collection of their debts, and does not limit them to proceedings in equity against stockholders alone, but also against anyone who is liable for such debts.

2. SAME—*creditor may proceed under section 25 of Corporation act without obtaining judgment at law.* A creditor having a claim against a corporation which has dissolved or ceased doing business may proceed in equity, under section 25 of the Corporation act, against stockholders or other persons liable for the debts of the corporation without first obtaining a judgment at law.

3. SAME—*section 25 of Corporation act is not a denial of right to trial by jury.* Section 25 of the Corporation act, providing for proceedings in equity where a corporation has dissolved or ceased doing business, is not unconstitutional, as a denial of the right to trial by jury.

4. SAME—*when a purchaser is liable for claim against corporation.* A corporation may rightfully discontinue business and dispose of its assets and property, and a purchaser dealing with it in good faith and paying for the property with money or other property does not become liable for unpaid claims against the corporation; but if the purchase is a scheme by which the corporation, which is a prosperous going concern, having assets to meet all its liabilities, is stripped of its property and assets and is absorbed by another corporation, the persons concerned in such transaction are liable for unpaid claims against the corporation.

5. SAME—*assets of a corporation are subject to claims of creditors.* Assets of a corporation in the hands of stockholders are regarded, in equity, as the property of the corporation and subject to the claims of creditors, and persons who deal with the property and assets of the corporation in such way as to place them beyond the reach of a creditor may be held liable in equity for the debt to the extent of such property and assets.

APPEAL from the Appellate Court for the Third District;—heard in that court on appeal from the Circuit Court of Sangamon county; the Hon. JAMES A. CREIGHTON, Judge, presiding.

HAMILTON, CATRON & SAMPSON, for appellants.

MAYER, MEYER & AUSTRIAN, JAMES H. MATHENY, and EDMUND BURKE, for appellee.

Mr. CHIEF JUSTICE CARTWRIGHT delivered the opinion of the court:

On May 24, 1899, the Springfield Coal Mining and Tile Company, a corporation owning and operating a coal mine near Springfield, entered into a contract with the appellee, the Standard Distilling and Distributing Company of Pekin, under the name of the Globe Distillery, to furnish the appellee with coal at certain prices from July 1, 1899, to July 1, 1900. The capital stock of the Springfield Coal Mining and Tile Company consisted of 176 shares of $100 each, which were owned by Joseph Trutter and Thomas R. Gray, each owning one-half. Trutter was president and Gray was secretary and superintendent. On October 10, 1899, a written agreement was entered into between Trutter and Gray by which they were to bid against each other for the shares of stock held by them, respectively. The bidding took place on October 16, 1899, when Gray was the highest bidder and Trutter agreed to sell his stock to Gray for $16,300, the sale to be closed within ten days. It appears that Gray had an arrangement to sell the stock

to H. C. Adams and John S. Jones, two of the appellants, who owned about all of the stock of another corporation named the Adams Coal Company, which also operated a coal mine. The capital stock of the Adams Coal Company consisted of 176 shares, of which Adams and Jones owned all but five, and Adams was president. Coal had been furnished under the contract to appellee, but about the date of the bidding between Trutter and Gray, notice was given to the appellee that after October 25, 1899, the coal company would refuse to fill any orders under the contract. On October 25, 1899, the agreement between Trutter and Gray was carried out by Trutter assigning all his stock to Gray. Adams took $34,000 of the money of the Adams Coal Company and furnished the money to pay Trutter. Gray then having acquired all the capital stock of the Springfield Coal Mining and Tile Company, assigned it to Adams and Jones for $34,000, and received the balance of that sum above the amount advanced to him to pay Trutter. Trutter and Gray conveyed some property of the corporation which was held in their individual names, and they also resigned their offices in the corporation. The new owners of the stock elected directors and officers, making Adams president also of that company. The transaction was, in fact, designed as a purchase by the Adams Coal Company of the property and assets of the other corporation, which took the form it did because the parties did not consider that the Adams Coal Company had a right to buy and hold the stock except by some crooked or indirect method. Adams and Jones therefore devised the scheme to use the money of their corporation necessary to buy the stock, and then they were to become officers of the Springfield Coal Mining and Tile Company and convey its property and assets to the other corporation and put it out of business. The Springfield Coal Mining and Tile Company did no business after the sale of the capital stock to Adams and Jones. On October 30, 1899, the Adams Coal Company

proposed to buy all the property, real and personal, and all the accounts, bills receivable and cash on hand, of the Springfield Coal Mining and Tile Company for $50,000, and to assume all debts, bills and accounts payable up to that date but not to assume any contract for future delivery of coal. The proposition made by Adams and Jones, for the Adams Coal Company, was accepted by them for the other corporation, and a deed was made on October 31, 1899, by the Springfield Coal Mining and Tile Company to the Adams Coal Company in consideration of $50,000, for which the purchaser gave its promissory notes payable to the seller. The Adams Coal Company took possession of the mine and all property of the other corporation and refused to deliver any more coal under the contract. On May 7, 1900, at a meeting of the board of directors of the Springfield Coal Mining and Tile Company, Adams proposed to surrender 160 shares of the capital stock of that corporation to be canceled, in exchange for the $50,000 in notes made by the Adams Coal Company for the conveyance, and that he would cancel the notes. The proposition was accepted, the notes were surrendered and both the shares of stock and notes were canceled. When these transactions were begun the Springfield Coal Mining and Tile Company was solvent. It had plenty of unencumbered property and was able to perform all its obligations, and after they were completed it had no property of any kind and had ceased to do business. The name of Adams Coal Company was changed to Jones & Adams Coal Company. The appellee was compelled to purchase other coal at higher prices and was damaged to the extent of $1626.77, and it filed the bill in this case against the Springfield Coal Mining and Tile Company, the Jones & Adams Company, H. C. Adams, John S. Jones, Joseph Trutter and Thomas R. Gray, setting out the transaction by which the property of the Springfield Coal Mining and Tile Company had been disposed of and its resources got rid of, and praying that

defendants should be decreed to pay their *pro rata* shares of the debts, and, if necessary, the deed should be set aside, and for such other relief as the case might require. Answers having been filed, the issues were referred to the master in chancery, who reported the facts substantially as above stated, but concluded that there was no equity in the bill and that appellee was not entitled to any relief. The court sustained exceptions to the report and entered a decree against the Springfield Coal Mining and Tile Company, the Jones & Adams Company, John S. Jones and H. C. Adams for the amount due appellee. There was no decree against Trutter or Gray, and the Springfield Coal Mining and Tile Company, which had nothing, did not appeal, but the Jones & Adams Company, John S. Jones and H. C. Adams prosecuted an appeal to the Appellate Court for the Third District. The Appellate Court affirmed the decree, and the same parties again appealed.

Section 25 of the Corporation act provides that "if any corporation . * * * shall dissolve or cease doing business, leaving debts unpaid, suits in equity may be brought against all persons who were stockholders at the time, or liable in any way, for the debts of the corporation, by joining the corporation in such suit," and the court is given power to appoint a receiver, etc. When this suit was brought the Springfield Coal Mining and Tile Company had ceased to do business and left debts unpaid, and if the appellants were liable for the debts of the corporation because they had appropriated its assets to the prejudice of creditors, the bill was properly filed against them. The statute is designed to aid creditors in the collection of their debts, and permits a suit in equity for that purpose to charge any one who is liable for such debts. (*Butler Paper Co.* v. *Robbins,* 151 Ill. 588.) It is probably true that section 25 was designed mainly to reach and enforce the liability of stockholders, which is the relief most frequently required, but the language of the section does not limit creditors to

proceedings against stockholders alone.   The argument for appellants that the circuit court erred because the suit could not be maintained without first obtaining a judgment at law against the Springfield Coal Mining and Tile Company ignores the direct provision of the statute, and the statute is not unconstitutional as a denial of the right to trial by jury.   (*Parmelee* v. *Price,* 208 Ill. 544.)   Assets of a corporation in the hands of stockholders are regarded, in equity, as the property of the corporation and subject to the claims of creditors; (*Singer* v. *Hutchinson,* 183 Ill. 606,) and if the appellants dealt with the property and assets of the Springfield Coal Mining and Tile Company in such a way as to place them beyond the reach of appellee as a creditor, they may be held liable in equity for the debt to the extent of such property and assets.

The Springfield Coal Mining and Tile Company might rightfully discontinue its business and dispose of its assets and property, and a purchaser dealing with it in good faith and paying for the property with money or other property would not assume any liability.   Of course, Trutter and Gray had a right to sell their shares of stock to anyone who wanted to buy and upon terms satisfactory to themselves, but the appellants had no right, as against a creditor, to inaugurate and carry out a scheme to dispose of the property of the corporation and its capital stock.   Appellants devised and carried out a plan by which the entire capital stock of the Springfield Coal Mining and Tile Company was transferred to Adams and Jones for $34,000,— money of the Adams Coal Company,—and then Adams and Jones, the nominal owners of the stock, caused a conveyance of all the property and assets to be made to the Adams Coal Company, the real owner of the stock, in consideration of notes amounting to $50,000, payable to the Springfield Coal Mining and Tile Company, and finally the stock, which really belonged to the Adams Coal Company, was exchanged for the $50,000 in notes of that company and both notes

and stock canceled. By this connected series of transactions a prosperous going concern, with assets to meet all its liabilities, was converted into one that had no assets and had ceased to do business. Neither money nor property was left to satisfy the obligations of the corporation, and a court of equity will not permit parties concerned in such transactions to evade payment of the obligations of the corporation which they have absorbed by such methods.

The facts proved were not at variance with those alleged in the bill, and the claim that the bill was not sustained by the proofs is not substantiated by the record.

The judgment of the Appellate Court is affirmed.

*Judgment affirmed.*