## Sterling-Midland Coal Company, Appellant, v. Chicago-Williamsville Coal Company et al., Appellees.

### Gen. No. 8,148.

Opinion
filed February 8, 1928.   Rehearing denied April 12, 1928.

CHARLES S. ANDRUS, for appellant.

A. M. FITZGERALD and H. C. MOORE, for appellees.

MR. JUSTICE NIEHAUS delivered the opinion of the court.

The controversy in this case concerns the allegations of an amended bill in equity, filed in the circuit court of Sangamon county by the Sterling-Midland Coal Company as judgment creditor against the Chicago-Williamsville Coal Company, and against William Ryan, John W. Kapp, Jr., John Sankey, George W. Hatch, Harry Deveraux, Eugene Colgin and Edgar H. Buckley, alleged to be directors and stockholders of the company.   Deveraux and Colgin were afterwards dismissed from the case as defendants in the bill.   The bill alleges that on, to wit, May 29, 1920, the Chicago-Williamsville Coal Company owned a coal mine which was situated in Sangamon county; and that on the date mentioned the company sold it to Leslie J. Pulliam; and upon information and belief it is stated that the amount received from this sale was in excess of $100,000; and that the company by this sale divested itself of its entire property and thereby became insolvent.   The bill further alleges that, at the time of the sale referred to, the Chicago-Williamsville Coal Company was indebted to the complainant company in the sum of $4,617.06, and a judgment was rendered on April 14, 1924, in favor of the complainant company in the circuit court of Cook county against the Chicago-Williamsville Coal Company; and that no part of this amount has been paid; and that the entire amount was due and owing.   The bill further alleges

that the defendants William Ryan, John W. Kapp, Jr., John Sankey, George W. Hatch, Harry Deveraux, Eugene Colgin and Edgar H. Buckley were directors and stockholders in the Chicago-Williamsville Coal Company at the time of the sale of the property mentioned, and that it was their duty to use the money obtained from said sale to pay the debts of the Chicago-Williamsville Coal Company, but that instead of doing so, the entire proceeds of the sale were distributed among the above-named defendants. The prayer of the bill is that the defendants, the Chicago-Williamsville Coal Company, William Ryan, John W. Kapp, Jr., John Sankey, George W. Hatch, Harry Deveraux, Eugene Colgin and Edgar H. Buckley, be required to account for the money received from the sale of the property of the Chicago Williamsville Coal Company, and may be compelled to pay the complainant company the amount due it; and that the complainant company may have such other further relief as equity may require. The defendants in the bill filed an answer admitting that the Chicago-Williamsville Coal Company is an Illinois corporation and had owned a mine situated in Sangamon county, and sold the mine to Leslie J. Pulliam. They neither admitted nor denied that they were directors and stockholders in the Chicago-Williamsville Coal Company on May 29, 1920, but asked that strict proof be made thereof; they neither admitted nor denied that the amount of money received from the sale was in excess of $100,000, but asked for strict proof of the fact; they denied that by the sale mentioned the Chicago-Williamsville Coal Company divested itself of its entire property; and denied that said company became or was insolvent; and they denied that at the time of the sale said company was indebted to the complainant company in the sum of $4,617.06, and that said amount was due and owing to the complainant company; and denied that the entire

proceeds of the sale of said coal mine was distributed among the defendants. They admit that on April 14, 1924, judgment was rendered in favor of the complainant company against the Chicago-Williamsville Coal Company in the circuit court of Cook county for the sum of $4,617.06, and admit that no part of said amount has been paid the complainant company by the Chicago-Williamsville Coal Company, but assert that said judgment was obtained by the complainant company through fraud, concealment and improper doings on the part of the complainant company. In the answer of the defendants there are also a number of general averments in reference to business transactions between the complainant company and the Chicago-Williamsville Coal Company prior to the recovery of the judgment referred to, in reference to the sale of coal shipped by the Chicago-Williamsville Coal Company to be sold by the complainant company for the Chicago-Williamsville Coal Company, and that the complainant company practiced a fraud on the Chicago-Williamsville Coal Company in not making a proper or correct accounting to the Chicago-Williamsville Coal Company, not reporting the correct amount of prices at which it sold the coal to the various purchasers thereof. But there are no allegations of fact to sustain the averment that the judgment was obtained by the complainant company through fraud, concealment and improper doings on the part of the complainant company. The defendants also filed a cross-bill containing averments of the character and effect referred to concerning certain business transactions involved in the sale of the coal shipped by the Chicago-Williamsville Coal Company to the complainant company, and that the complainant company committed a fraud upon the Chicago-Williamsville Coal Company by not making a proper and correct accounting in reference to the sales of such coal, prior to the

recovery of the judgment referred to, and the prayer of the cross-bill is that the complainant company may be compelled to make a true and correct account of the transaction referred to. A demurrer was sustained to the cross-bill, and no further proceedings were had in reference thereto. The issues involved on the original bill were referred to the master, who heard the testimony of the witnesses and reported the same to the court. Upon a hearing of the case, the court found the equities in the cause in favor of the defendants, and dismissed the bill for want of equity. An appeal is prosecuted from the decree dismissing the bill.

On the hearing before the master it was stipulated that the records of Sangamon county showed a "deed of conveyance from the Chicago-Williamsville Coal Company, a corporation, to Leslie J. Pulliam; and that this deed bears date the 29th day of May, 1920; and was executed by the Chicago-Williamsville Coal Company, by Edgar H. Buckley, President; and attested by John W. Kapp, Jr., Secretary; and that it bears United States Revenue Stamps for the amount of $200,000.00 consideration; and that it consisted of mine property located in the county of Sangamon."

John W. Kapp, Jr., was a witness on the hearing before the master, and testified concerning the controverted matters in issue as follows: "I live at Springfield and am one of the defendants. On May 29, 1920, to the best of my recollection, the directors of the Chicago-Williamsville Coal Company were Edgar Buckley, George W. Hatch and John E. Sankey, . . . and William Ryan. I was Secretary of the corporation. . . . We had an office in the Booth building. . . . Ed Buckley was one of the directors, John Sankey was one of them, I was one, and Mr. Ryan was one, and George W. Hatch. The Chicago-Williamsville Coal Company sold the mine to Leslie J. Pulliam. I do not know how much they received for it. I was one of the directors and one of the stockholders. I do not know

how much money they received. I know how much I received. I received about $22,000.00. Mr. Ryan was treasurer at that time. I don't think the money was paid to him. The Chicago-Williamsville Coal Company did not own any other property except this mine on May 29, 1920, that I know of. . . . The Chicago-Williamsville Coal Comapny after that never transacted any business that I know of." The witness also testified, concerning the books of the corporation after the sale referred to: "We put the books in the Chatterton building for storage. I had resigned. They were not mine any more. Mr. Sankey had resigned. The books were taken to the Chatterton theater in June, 1920." On cross-examination the witness testified: "I do not know when I sold my stock in the Chicago-Williamsville Coal Company. I could not tell you whether it was before or after the deed to Mr. Pulliam. When we sold out I believe I had 333 shares. I am not sure about that but that is to the best of my knowledge. I do not remember all the details for consideration of the sale of this stock. I got about $22,000.00. After the sale of the stock I resigned as director and secretary."

William M. Ryan, one of the defendants, testified as follows: "I live at Springfield and am one of the defendants and was treasurer of the Chicago-Williamsville Coal Company. When the sale of the mine was made to Leslie J. Pulliam on May 29, 1920, $66,000.00 was received as a consideration. The Chicago-Williamsville Coal Company is not engaged in business now and has not been engaged in business since the sale of this property. After this sale this company did not own any other property. The proceeds of the sale went to Sankey, Kapp and I. We got $22,000.00 apiece." The witness also testified on cross-examination: "The consideration for the property, as I understand it, was $200,000.00. There were seven, I think, stockholders in this corporation, or six, and the prop-

erty was sold to Leslie J. Pulliam as an individual. I do not know what he done with Buckley, Hatch, Deveraux, or the rest of the stockholders, except he took care of Sankey, Kapp and I, to get us out. He assumed other indebtedness for the property, firms of Chicago and others. I do not remember whether they were paid or what was done about it. My knowledge and testimony is solely to the money that Mr. Kapp, and Sankey and I received for the stock. I sold out. . . . As I remember that, the deal was made along sometime in the middle of May,.the 10th or 12th, but we did not get our money until along about the end of May. The abstracts of title, etc., had to be passed upon, and when that was done, of course, we got our money. . . . I stated that I received this money after the sale of the property. After everything was O. K.''

John E. Sankey was a witness and testified, in response to the inquiry as to who had negotiations with, him and Mr. Ryan relative to the purchase of his stock which he said he sold, at the time of the sale of the mine property, as follows: ''Mr. Buckley. I owned 334 shares of stock. We sold our stock, we pooled our stock and really I don't know who we sold it to, except our stock was bought and we received sixty-six thousand dollars; $22,000.00 went to me for my portion of the stock. When I speak of we, I mean Mr. Kapp, Mr. Ryan and myself. Mr. Buckley is who we dealt with but so far as who the stock was transferred to I don't know about that, we turned our stock in. The stock certificates of 1,000 shares to Ryan, Kapp and myself were turned over to Mr. Buckley. This was before the sale of the Chicago-Williamsville mine to Mr. Pulliam. I had no negotiations with Mr. Pulliam myself. I had no negotiations with Mr. Pulliam relative to the sale of the Chicago-Williamsville mine. I actually don't know what the purchase price was or how it was paid. I understand the basic price was $200.000 and that he had another understanding with

another set of stockholders which of course—that is just hearsay. I only know what we received. Our dealings were with Mr. Buckley. It was a cash proposition with us, they tried to give us, and wanted us to take notes and one thing or another, but we gave them to understand that it would have to be cash and it was.'' The witness also testified on cross-examination: ''The mine was sold to Pulliam by the Chicago-Williamsville Coal Company May 29, 1920, and there was some dissension among the directors and stockholders and the money that I testified that we received is what I received when the mine was sold.''

George W. Hatch gave the following testimony in reference to the sale of the mine property: ''I suppose the mine was sold to Leslie J. Pulliam or the Union Fuel Company. I don't know how the transfer was made. I took two notes in payment for my stock. I could not tell you whether they were signed by the Union Fuel or L. J. Pulliam. I don't know whether these notes were taken as consideration for the sale of the mine. I got this from Mr. Buckley, he owed me money. I did not get the check or notes from L. J. Pulliam or Union Fuel Company. I got them from Mr. Buckley. They were turned over to me by Buckley as payment for my stock.''

It is apparent from the testimony of the directors and stockholders referred to that the Chicago-Williamsville Coal Company disposed of and sold its mining property, which was situated in Sangamon county, to Leslie J. Pulliam for a consideration of $200,000 on or about the 29th day of May, 1920; that the property sold constituted the entire assets of the corporation, and that immediately after its sale the Coal Company ceased to do business and practically passed out of existence; that the proceeds of the sale of the property was divided among the directors and stockholders of the company, William Ryan, John W. Kapp, Jr., John Sankey, George W. Hatch and Edgar H. Buckley, and

that they surrendered their stock therefor; that at the time of the sale of the property of the Coal Company and the division of the proceeds of the sale, among the directors and stockholders named, the complainant company had a valid and subsisting judgment against the Chicago-Williamsville Coal Company, amounting to the sum of $4,617.06, and legal interest thereon from the date thereof, April 14, 1924; and that by the sale in question no property or assets of the company remained for the payment of the judgment; and that by the sale and transfer of the Coal Company's property and the division of the proceeds of the sale thereof among the directors and stockholders, the Chicago-Williamsville Coal Company was rendered insolvent.

It is contended by the appellees that what they actually did was to take a part of the proceeds of the sale for their stock in the Coal Company; and that they are not liable to account for the money which they received, because they received it in payment for their stock. It may be said, concerning this contention, that the form of the transactions referred to does not change the character and effect thereof. And it is clear, from the evidence, that there was no actual sale of the stock; and there is no evidence of any purchaser of the stock, nor of any transfer to any purchaser, but the true nature of the transaction was a relinquishment of the stock for the proceeds of the sale of the mine property. It is also apparent from the evidence that the money or value which they received for their stock was not the money of a bona fide purchaser of the stock, but a part of the money realized from a sale of the property of the Coal Company. It is well settled that where a corporation, owing debts, sells all its property and its officers distribute its assets among its stockholders or otherwise misappropriate its assets, they may be held liable as trustees for the corporate debts. In *Clapp v. Peterson*, 104 Ill. 26, the court said concerning this matter: "In *Sanger v. Upton*, 91 U. S.

60, it is laid down: 'The capital stock of an incorporated company is a fund set apart for the payment of its debts. It is a substitute for the personal liability which subsists in private co-partnerships. When debts are incurred, a contract arises with the creditors that it shall not be withdrawn or applied, otherwise than upon their demands, until such demands are satisfied. The creditors have a lien upon it in equity. If diverted, they may follow it as far as it can be traced, and subject it to the payment of their claims, except as against holders who have taken it bona fide for a valuable consideration and without notice. It is publicly pledged to those who deal with the corporation for their security.' This doctrine is abundantly established by the authorities.'' *Beach v. Miller,* 130 Ill. 162; *Atwater v. American Exchange Nat. Bank,* 152 Ill. 605; *Singer v. Hutchinson,* 183 Ill. 606; *Standard Distilling & Distributing Co. v. Springfield Coal Mining & Tile Co.,* 239 Ill. 600.

For the reasons stated, we conclude that the court erred in finding that there was no equity in the complainant company's bill and dismissing the same. The decree is therefore reversed and the cause remanded with directions to enter a decree requiring the defendants William Ryan, John W. Kapp, Jr., John Sankey, George W. Hatch and Edgar H. Buckley to pay the amount of the judgment of the complainant company with the accrued interest thereon by a short day to be fixed by the court; and that in default of such payment, that the court enter a judgment against the appellees for the amount of the judgment and the accrued interest thereon.

*Reversed and remanded with directions.*