## LORENZO HACKETT *v.* ROLLIN AMSDEN.

*Exemption. Extents. Delinquent Collector of Taxes.*

1. The statute exempting certain property from attachment and execution does not embrace *extents* against delinquent collectors of town taxes; thus, the defendant, a sheriff, sold on an extent issued against the plaintiff, a delinquent tax collector, property exempt from execution; *Held,* that the same was not exempt from the extent and that the defendant was not liable in trespass.

2. The court think it clear that the Statute of Exemptions is not available as against distress for taxes, except as specified in section 375 R. L., and No. 11, Acts of 1882.

3. The maxim, *expressio unius est exclusio alterius,* applied in the construction of statutes.

4. R. L., s. 1556. Exempting goods, chattels from execution; s. 375, what goods cannot be distrained for taxes, construed.

TRESPASS *de bonis.* · Plea, general issue, and notice of justification under certain extents issued against· the plaintiff, a delinquent tax collector of the town of Hartland. Trial by court, December Term, 1882, Windsor County, TAFT, J., presiding.

Judgment *pro forma* for the plaintiff.

The only question raised in the court below was, whether s. 1556 R. L., exempting certain property from attachment and execution, exempted the same property from extents. The extent was issued August 14th, 1880.

*Gilbert A. Davis* and *Chas. H. Heath,* for the defendant.

Section 1556 R. L., does not apply to extents. Attachment and executions are remedies in suits *inter partes,* and according to the common law; but an *extent* is issued in another and *quasi* criminal class of cases, not *inter partes,* but under statutory provisions. G. S. c. 84, ss. 49, 52 ; per Ross, J., In re *Hackett,* 53 Vt. 354. The exemption statutes have never in this State

included *extents.* *See* Act of. March 7th, 1797, Tol. St. 440 ; Slade C. L. 405 ; R. St. 376 ; Com. St. 469 ; G. S. c. 84. *See* also *Griswold* v. *Rutland,* 23 Vt. 324 ; Cooley Tax. 34, 496, 504 ; *Waldron* v. *Lee,* 5 Pick. 328 ; *Barnes* v. *Hall,* 55 Vt. 420 ; *Hutchins* v. *Chambers,* 1 Burr. 588 ; *Sherwin* v. *Bugbee,* 16 Vt. 439 ; *Daniels* v. *Nelson,* 41 Vt. 166. Taxes are not founded on contract; but towns make an arbitrary and "authoritative exaction." *Daniels* v. *Nelson,* 41 Vt. 166 ; *Johnson* v. *Howard,* 41 Vt. 122, 126 ; *Webster* v. *Seymour,* 8 Vt. 135. Neither does the assessment of a tax " create a debt which can be enforced by suit," according to the common law. *Shaw* v. *Peckett,* 26 Vt. 486 ; Hill. Tax. ss. 25, 26. All the property of the delinquent tax-payer is liable to distress, except that specially exempted. A delinquent collector stands under the law with no exemptions. *Brooks* v. *State,* 54 Ga. 36 ; *Com.* v. *Lay,* 12 Bush, (Ky.) 283 ; *Com.* v. *Cook,* 8 Bush, 220. *See* 1 Kent Com. 460 ; 1 Bl. Com. 260 ; *United States* v. *Knight,* 14 Pet. 315.

*French & Southgate,* for the plaintiff.

It is said the same property may be taken on an extent as on a warrant for taxes. If so, no case has made it clear just what may be taken for taxes. The statute uses the word *distrain.* But at common law tools of one's trade were exempt from distress for the sake of the public. 3 Bl. Com. 10 ; 3 Bac. Abr. 171 ; Com. Dig. 479 ; Dan. Abr. p. 35. But by what analogy can it be maintained that the same property can be taken on an extent that can be on a warrant ? The statute gives no such intimation, but speaks of this execution as of others. G. S. c. 84, s. 51 ; G. S. c. 33, s. 2 ; G. S. c. 12, s. 60. The exemption statutes have been applied to the trustee process. *Parks* v. *Cushman,* 9 Vt. 320 ; *Wait* v. *Brewster,* 31 Vt. 512. And such statutes in all courts, receive a liberal construction. 7 Vt. 465. But there is no need of construction ; for the statutes clearly embrace *extents.* G. S. c. 47, s. 13 ; Act No. 39, 1866. The exemption is "from attachment and *execution;*" but an *extent,* or *extendi facias,* is a writ of execution. 2 Tidd Pr. 1088.

Previously to the use of this form of execution there was none by which the creditor could obtain the use of *all* the debtor's land; by the *levari fa.* only the profits could be taken; by the writ of elegit, only a moiety of the land. 3 Bac. Abr. 689; 2 Tidd Pr. 1073.

The extent was introduced in behalf of the crown, by which form of execution land could be taken and appraised to the creditor at its full value. It was originally an execution for the debt of the king, by *extendi facias.* 4 Com. Dig. 226; 2 Tidd Pr. 1087; 3 Bl. Com. c. 26. At common law things necessary for the support of the family could not be taken on an extent. 2 Tidd Pr. 1098. The extent under our statute is issued as a *final execution* to carry into effect the judgment of the court. G. S. c. 84, ss. 50, 52; *Griswold* v. *Rutland*, 23 Vt. 324; *In re Hackett*, 53 Vt. 354. The security of the town is in the constable's bond. In the recent case of *Fink* v. *O'Neil*, in U. S. Sup. Ct., (15 Reporter, 33,) it was held that the homestead exemption laws applied as against the State and the United States, except as to taxes expressly excepted by statute.

The opinion of the court was delivered by

ROWELL, J. The question is, does the Statute of Exemptions from attachment and execution embrace extents against delinquent collectors of town taxes? In order to determine this question, it is necessary to consider the history of legislation on the subject of such exemptions and of the collection of taxes, for the entire body of our law on both those subjects is statutory.

The first act "empowering collectors to collect rates" was passed in February, 1779. It provided that whenever any town, society, or other community, authorized by law to grant and levy any rate or tax for defraying the necessary charges and expenses thereof, should agree upon and grant a rate or tax, it should choose a collector thereof, and that a warrant should issue for its collection, directed to the collector, requiring and empowering him to gather and collect the same according to the grant thereof,

and that the collector should be authorized to collect the same according to his warrant.   Vt. State Papers, 312.

At the same session an act was passed, "directing and regulating the levying and serving of executions," which subjected all the personal and moveable estate of the debtor to levy, "except necessary apparel, bedding, tools, arms, implements of his household, necessary for upholding life, one yoke of oxen, and one cow."   Vt. State Papers, 362.

By the St. 1787, p. 126, collectors of taxes were empowered and required to distrain the goods and chattels of persons neglecting to pay their rates, and for want thereof, to attach their bodies, and in case of their absence and for want of goods and chattels, to levy on their lands.   This act contains the first provision for remedy against delinquent tax-collectors that we have been able to find.   In the case of State taxes, it provided that if any constable should be delinquent, the treasurer should issue his *warrant* against him, directed to the sheriff of the county, requiring him to levy the sum remaining due, and that the sheriff should levy the same " upon the goods or estate of such constable in like manner as constables are herein directed to serve their warrants."   Said act further provided that in case collectors did not perform according to law the trust committed to them, they should be accountable for the rate or such arrears thereof as they neglected to gather and pay over to the selectmen of the town, committee of the society or other community granting the tax, who were empowered to demand the arrearage from such collectors, and on failure of payment, to take out a *warrant* from any justice, directed to any of the constables, to distrain the sums or rates neglected to be collected and paid by such collectors out of the estate of the collector so neglecting.

The St. 1797, p. 344, contains the first provision for notice to show cause to delinquent collectors of town, parish, district, or other community taxes ; and it called the process to be issued against them an *extent* instead of a *warrant*, and provided that it should run against the goods, chattles, or estate of the collector, and for want thereof against his body.   The statute has

Hackett *v.* Amsden.

remained substantially the same ever since, except that in 1880 an appeal was allowed from the judgment of the justice before whom the collector is cited, which did not exist before. *Griswold* v. *Rutland*, 23 Vt. 324.

We find no statutory exemptions from distress for taxes until we come to the military act of 1818, whereby it was provided, "that every citizen enrolled and providing himself with a uniform, arms, ammunition and accoutrements required by this act, shall hold the same exempted from all suits, distresses, executions, or sales for debt or payment for taxes." Slade's St. p. 629, s. 32. The part of this provision that related to exemption from distress for taxes was incorporated into sec. 5, ch. 77, of the the Revision of 1839, which exempted "the arms and accoutrements" that it was the duty of the tax-payer to keep.

The statute stood thus until 1876, when in case of taxes assessed on real estate a further exemption was made of such suitable apparel, bedding, provisions not exceeding in value twenty-five dollars, and articles of household furniture as may be necessary for upholding life, and one sewing-machine kept for use. St. 1876, No. 22. But neither in the Revision of 1880, s. 375, nor the St. 1882, No. 11, amendatory thereof, is there any exemption of "arms and accoutrements," but only the exemptions above named in case of taxes assessed on real estate.

Thus we see that down to 1818, the Legislature made no exemptions from distress for taxes; and from that time down to 1876, made no additions to the exemptions of the military act; and now makes none except as to taxes assessed on real estate.

But on the other hand, from time to time and frequently since the act of 1779 in that behalf, additions have been made to the statutory exemptions from attachment and execution, until they have become and are large in number and value. And it is to be observed that *no* statute has ever in express terms made any exemption in favor of delinquent tax-collectors.

We think it clear that the provisions of the Statute of Exemptions against attachment and execution are not, and were not intended to be, available as against distress for taxes; and such.

was the opinion of this court as expressed by REDFIELD, J., in *Sherwin* v. *Bugbee*, 16 Vt. 439, where it is said that the exemption from distress of "arms and accoutrements" by the statute for the collection of taxes, by fair implication, made all other property liable to such distress, on the well known maxim, *expressio unius est exclusio alterius;* and this maxim is never more applicable than in the construction of statutes. Broom Legal Max. [*664].

But it is argued that this is not determinative of the question; that it does not follow because a thing can be taken on a tax-warrant that therefore it can be taken on an extent; that an extent is an *execution*, within the meaning of that term as used in the Statute of Exemptions, and that the provisions of that statute are as available against an extent as against any other execution.

This leads us to consider somewhat the nature of extents.

In England, an extent, or *extendi facias*, is the peculiar remedy to recover debts of record due to the crown. It differs from an ordinary execution at the suit of a subject, in that under it, the body, lands and goods of the debtor may all be taken at once, to compel payment of the debt. There are two kinds of extents there, in chief and in aid. An extent in chief issues from the Court of Exchequer, and directs the sheriff to take an inquisition or inquest of office on the oath of lawful men, to ascertain the lands, etc., of the debtor, and seize them into the Queen's hands. The writ is usually preceded by a *scire facias*, that the debtor may have opportunity to appear and show cause against it; but when the debt is in danger of being lost, it will issue immediately on an affidavit of debt and danger and a fiat, in which case, after the writ is returned, the debtor, if he disputes the debt, may enter an appearance and plead thereto. There is also an extent in chief in the second degree, which is a hostile proceeding by the crown against the debtor of a crown-debtor, against whom also an extent in chief has issued.

An extent in aid issues, not at the suit of the crown, like an extent in chief, but at the suit or instance of a crown-debtor

against a person indebted to himself; and it is grounded on the Statute of Extent, 33 Hen. IV. c. 39, and on the principle that the crown is entitled to the debts due to the debtor. But when a crown-debtor ceases to be liable to the crown, he ceases to be entitled to crown process. Extents in chief have priority over extents in aid, and both have priority over subject creditors. By the treaty of Union, extents were introduced into Scotland in revenue matters.

Under our statute an extent may be likened to an extent in chief in England. It is so to speak, *prerogative process,* affording a summary remedy for recovering public revenue from public officers who have committed a breach of public duty, and in case of state taxes for recovery from the inhabitants of the town as well. No notice is given to show cause against the State Treasurer's extent. In the words of PARKER, Ch. J., in *Waldron* v. *Lee,* 5 Pick. 328, " the wheels of government cannot be stoped to hear complaint."

While this process is in the nature of an execution, as is also a warrant for the collection of taxes, it is very unlike the process commonly called an execution, which is issued on judgments recovered in suits *inter partes.* Extent proceedings are not *inter partes,* but rather in the nature of criminal proceedings. *In re Hackett,* 53 Vt. 356. And in *State Treasurer* v. *Holmes,* 2 Aik. 48, a State Treasurer's extent was held not to be an execution within the meaning of that term as used in the statute for affirmance against bail of judgments rendered against sheriffs and high-bailiffs for official default on which *execution* had been taken out and returned *non est.*

The Statute of Exemptions of 1779 cannot well be said to have included extents, for they were not then known to our law. Besides, the very wording of the act shows that the term *execution,* as therein used, meant nothing but the ordinary process issued on judgments recovered in suits *inter partes.* The language is this: " Be it enacted, etc., that when any judgment is recovered and execution taken out *thereon,*" etc. The wording of the Statute of Exemptions of 1787 is the same. Nor can it

be said that the latter act embraced the extents called *warrants*, provided for by the act of that year for the collection and payment of rates. Those warrants were not " taken out" on judgments recovered. The State Treasurer's warrant was issued by himself—an executive officer; and warrants against delinquent collectors of town, society, and other community taxes were " taken out " from any justice of the peace, who acted ministerially and not judicially in issuing them. In no case was notice given to show cause against such warrants. The proceedings and the process were summary and somewhat rigorous, and were intended to be so. And they maintained that character unchanged down to the time in question, except that in 1797, as we have seen, their rigor was a little abated in case of collectors of town and other community taxes by a provision for notice to show cause; but such notice has never been required in case of extents issued by the State Treasurer. By the provision for notice, a safeguard was created against abuse of this process by inferior officers of the revenue; but the proceedings were not thereby rendered any more *inter partes* than they were before, though somewhat less summary; nor was the character of the process thereby changed; it was still prerogative, and no more an execution than before.

In tracing the history of legislation as to extents and executions down to the present time, we find them always treated separately and as really distinct processes, and in no one instance do the terms seem to, have been used convertibly. They are contained in statutes relating to different subjects, and extents are not known except in connection with revenue matters, and we have adopted this use of them from England, and, as we have seen, it is the use made of them in Scotland.

We can derive but little aid on this question from decisions outside our own State. It is pretty much a question of statutory construction.

*Fink* v. *O'Niel*, 106 U. S. 272, is not in point. All that case decides is, that the United States, by appropriate legislative enactment, has adopted the laws of Wisconsin exempting home-

steads from execution, and that said laws apply in cases of executions issued on judgments in favor of the United States.

The result is, we hold that the Statute of Exemptions does not embrace extents, and that the court below erred in holding otherwise.

Judgment reversed, and cause remanded.