PHILLIPS ET AL., EXECUTORS, *v.* COMMISSIONER OF INTERNAL REVENUE.

No. 455. Argued April 23, 1931.—Decided May 25, 1931.

590

*Mr. Elkan Turk,* with whom *Messrs. Herman Boldman, Benjamin Wiener,* and *Donald Bourne* were on the brief, for petitioners.

*Assistant Attorney General Youngquist,* with whom *Solicitor General Thacher, Mr. Sewall Key* and *Miss Helen R. Carloss,* Special Assistants to the Attorney General, and *Messrs. Whitney North Seymour, Clarence M. Charest,* General Counsel, and *Allin H. Pierce,* Special Attorney, Bureau of Internal Revenue, were on the brief, for respondent.

*Mr. Oscar R. Ewing,* and *Messrs. James C. Denton* and *Richard H. Wills,* by special leave of Court, filed briefs as *amici curiae.*

MR. JUSTICE BRANDEIS delivered the opinion of the Court.

In 1919, the Coombe Garment Company, a Pennsylvania corporation, distributed all of its assets among its stockholders, and then dissolved. Thereafter, the Commissioner of Internal Revenue made deficiency assessments against it for income and profits taxes for the years 1918 and 1919. A small part of these assessments was collected leaving an unpaid balance of $9,306.36. I. L. Phillips of New York City, had owned one-fourth of the company's stock and had received $17,139.61 as his distributive dividend. Pursuant to § 280 (a) (1) of the Revenue Act of 1926, c. 27, 44 Stat. 9, 61, the Commissioner sent due notice that he proposed to assess against, and collect from, Phillips the entire remaining amount of the deficiencies. No notice of such deficiencies was sent

to any of the other transferees, and no suit or proceedings for collection was instituted against them. Upon petition by Phillips' executors for a redetermination,.the Board of Tax Appeals held that the estate was liable for the full amount. 15 B. T. A. 1218. Its order was affirmed by the United States Circuit Court of Appeals for the Second Circuit. 42 F. (2d) 177. Because of conflict in the decisions of the lower courts [1] a writ of certiorari was granted. 282 U. S. 828.

Stockholders who have received the assets of a dissolved corporation may confessedly be compelled, in an appropriate proceeding, to discharge unpaid corporate taxes. Compare *Pierce* v. *United States*, 255 U. S. 398. Before the enactment of § 280 (a) (1), such payment by the stockholders could be enforced only by bill in equity or action at law.[2] Section 280 (a) (1) provides that the liability of the transferee for such taxes may be enforced in the same manner as that of any delinquent taxpayer.[3]

The procedure prescribed for collection of the tax from a stockholder is thus the same as that now followed when payment is sought directly from the corporate taxpayer. This procedure is now generally known, and some parts of it will later be considered in detail. As applied directly to the taxpayer, its constitutionality is not now assailed. Compare *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716. But it is contended that to apply it to stockholder transferees violates several constitutional guaranties; that

---

[1] Compare *Owensboro Ditcher & Grader Co.* v. *Lewis,* 18 F. (2d) 798; *Mid-Continent Petroleum Corp.* v. *Alexander,* 35 F. (2d) 43; *Routzahn* v. *Tyroler,* 36 F. (2d) 208. See also *Felland* v. *Wilkinson,* 33 F. (2d) 961; Cappellini *v.* Commissioner, 14 B. T. A. 1269.

[2] Such proceedings to obtain payment of corporate income and profits taxes from stockholders or other transferees have been frequently brought. See *United States* v. *McHatton,* 266 Fed. 602; *Updike* v. *United States* 8 F. (2d) 913, certiorari denied, 271 U. S. 661; *United States* v. *Capps Mfg. Co.,* 9 F. (2d) 79, affirmed, 15 F. (2d) 528; *United States* v. *Fairall,* 16 F. (2d) 328; *United States* v.

additional obstacles are encountered if it is applied to transfers made before the enactment of § 280 (a). (1); that the specific liability here sought to be enforced is governed by the law of Pennsylvania and barred by its statute of limitations; and that, in no event, can the stockholder be held liable for more than his pro rata share of the unpaid corporate tax.

*First.* The contention mainly urged is that the summary procedure permitted by the section violates the Constitution because it does not provide for a judicial determination of the transferee's liability at the outset. The argu-

*Klausner,* 25 F. (2d) 608; *United States* v. *Armstrong,* 26 F. (2d) 227; *United States* v. *Garbutt,* 27 F. (2d) 1000, modified, 35 F. (2d) 924; *United States* v. *Pann,* 23 F. (2d) 714, affirmed, 44 F. (2d) 321. Compare *United States* v. *Boss & Peake Automobile Co.,* 285 Fed. 410, affirmed, 290 Fed. 167; *Dreyfuss Dry Goods Co.* v. *Lines,* 18 F. (2d) 611, reversed, 24 F. (2d) 29; *United States* v. *Snook,* 24 F. (2d) 844, reversed, sub. nom. *Austin* v. *United States,* 28 F. (2d) 677; *United States* v. *Updike,* 25 F. (2d) 746, affirmed, 32 F. (2d) 1, 281 U. S. 489; *People's Industrial Life Ins. Co.* v. *United States,* 29 F. (2d) 650.

Where the transferee took property subject to the tax lien of the United States, the lien could be enforced by summary proceeding. Rev. Stat. §§ 3185–3205; *Mansfield* v. *Excelsior Rfg. Co.,* 135 U. S. 326, 336; *Blacklock* v. *United States,* 208 U. S. 75, 87. Or by an action in equity. Rev. Stat. 3207. Compare 26 U. S. C. §§ 115, 136; *Heyward* v. *United States,* 2 F. (2d) 467; *In re Glover-McConnell Co.,* 9 F. (2d) 683, 686. See also *United States* v. *Capital City Dairy Co.,* 252 Fed. 900, 904; *United States* v. *Haar,* 27 F. (2d) 250, 251, certiorari denied, 278 U. S. 634.

[3] " The liability, at law or in equity, of a transferee of property of a taxpayer, in respect of the tax . . . imposed . . . by any prior income, excess-profits, or war profits tax Act" shall " be assessed, collected, and paid in the same manner . . . as a deficiency in a tax imposed by this title (including the provisions in case of a delinquency in payment after notice and demand, the provisions authorizing distraint and proceedings in court for collection, and the provisions prohibiting claims and suits for refunds)." 44 Stat. 61. This remedy is in addition to proceedings to enforce the tax lien or actions at law and in equity. Act of February 26, 1926, c. 27, § 1122

ment is that such liability (except where a lien had attached before the transfer) is dependent upon questions of law and fact which have heretofore been adjudicated by courts; that to confer upon the Commissioner power to determine these questions in the first instance, offends against the principle of the separation of the powers; and that the inherent denial of due process is not saved by the provisions for deferred review in a suit to recover taxes paid, or, in the alternative, for an immediate appeal to the Board of Tax Appeals with the right to review its determination in the courts, because there are limitations and conditions in either method of judicial review.

Section 280(a)(1) provides the United States with a new remedy for enforcing the existing " liability at law or in equity." The quoted words are employed in the statute to describe the kind of liability to which the new remedy is to be applied and to define the extent of such liability. The obligation to be enforced is the liability for the tax. *Russell* v. *United States*, 278 U. S. 181, 186; *United States* v. *Updike*, 281 U. S. 489, 493–4. The proceeding is one to collect the revenue. That Congress deemed the section necessary in order to make the tax-collecting system more effective, is established not only by the fact of enactment but also by the reports of the committees.[4]

---

(b), 44 Stat. 9, 121; Act of May 29, 1928, c. 852, § 617 (b), 45 Stat. 791, 877. Compare *United States* v. *Greenfield Tap & Die Corp.*, 27 F. (2d) 933; *United States* v. *Updike*, 25 F. (2d) 746, 747, affirmed, 32 F. (2d) 1, 4, 281 U. S. 489.

[4] Conference Report to accompany H. R. 1, H. Rep. No. 356, 69th Cong., 1st Sess., February 22, 1926, p. 44, states that the section " makes the procedure for the collection of the amount of the liability of transferees conform to the procedure for the collection of taxes . . . for procedural purposes the transferee is treated as a taxpayer would be treated." Compare H. Rep. No. 2, 70th Cong., 1st Sess., December 7, 1927, pp. 31–32: " Section 280 of the 1926 Act has proved a very effective and necessary method of stopping tax evasion

The right of the United States to collect its internal revenue by summary administrative proceedings has long been settled.[5] Where, as here, adequate opportunity is afforded for a later judicial determination of the legal rights, summary proceedings to secure prompt performance of pecuniary obligations to the government have been consistently sustained. Compare *Cheatham* v. *United States*, 92 U. S. 85, 88–89; *Springer* v. *United States*, 102 U. S. 586, 594; *Hagar* v. *Reclamation District No. 108*, 111 U. S. 701, 708–709. Property rights must yield provisionally to governmental need. Thus, while protection of life and liberty from administrative action alleged to be illegal, may be obtained promptly by the writ of habeas corpus, *United States* v. *Woo Jan*, 245 U. S. 552; *Ng Fung Ho* v. *White*, 259 U. S. 276, the statutory prohibition of any "suit for the purpose of restraining the assessment or collection of any tax" postpones redress

through the various favorite methods recognized by everyone prior to the 1926 Act. The enforcement of the liability through court process had been ineffective and the amount of revenue lost through mala fide transfers or through corporate distribution of assets was admittedly large."

[5] *Cheatham* v. *United States*, 92 U. S. 85, 89; *State Railroad Tax Cases*, 92 U. S. 575, 615; *Springer* v. *United States*, 102 U. S. 586, 593; *Dodge* v. *Osborn*, 240 U. S. 118, 120; *Graham* v. *du Pont*, 262 U. S. 234, 255. The earliest federal excise tax acts contained provisions for suit, or levy by distraint and sale. *e. g.*, Act of March 3, 1791, c. 15, § 23, 1 Stat. 199, 204; Act of December 21, 1814, c. 15, § 5, 3 Stat. 152, 154; Act of January 9, 1815, c. 21, § 26, 3 Stat. 164, 173; Act of January 18, 1815, c. 22, § 5, 3 Stat. 180, 182; *id.*, c. 23, § 9, 3 Stat. 186, 188. Similarly, a tax lien on lands and chattels was early introduced. Act of July 22, 1813, c. 16, § 19, 3 Stat. 22, 30; Act of January 9, 1815, c. 21, § 24, 3 Stat. 164, 172. Compare Act of March 3, 1815, c. 100, §§ 12–15, 3 Stat. 239, 241.

For the ancient English practise of summary seizure of the property of a debtor of a Crown debtor, by means of an immediate extent in the second degree, see West, The Law and Practice of Extents, cc. 1–3, 24; Chitty, Laws of the Prerogative of the Crown, pp. 261,

for the alleged invasion of property rights if the exaction is made under color of their offices by revenue officers charged with the general authority to assess and collect the revenue.[6] *Snyder* v. *Marks*, 109 U. S. 189; *Dodge* v. *Osborn*, 240 U. S. 118; *Graham* v. *du Pont*, 262 U. S. 234. This prohibition of injunctive relief is applicable in the case of summary proceedings against a transferee. Act of May 29, 1928, c. 852, § 604, 45 Stat. 791, 873. Proceedings more summary in character than that provided in § 280, and involving less directly the obligation of the taxpayer, were sustained in *Murray's Lessee* v. *Hoboken Land & Improvement Co.*, 18 How. 272. It is urged that the decision in the *Murray* case was based upon the peculiar relationship of a collector of revenue to his government. The underlying principle in that case was not such relation, but the need of the government promptly to secure its revenues.

Where only property rights are involved, mere postponement of the judicial enquiry is not a denial of due

---

303–07; Price, Laws and Course of the Exchequer, c. XIV; Robertson, Civil Proceedings By and Against the Crown, c. III, pp. 203–04, 206–07. As to the adoption of the writ in this country, see *Hackett* v. *Amsden*, 56 Vt. 201, 206–07. Compare *McMillen* v. *Anderson*, 95 U. S. 41.

[6] Rev. Stat. § 3224. There is no substantial relaxation of this principle in the provision that, while an appeal is pending before the Board of Tax Appeals, no proceeding by distraint may be taken, and, notwithstanding Rev. Stat. § 3224, such proceeding may be enjoined. Act of February 26, 1926, c. 27, § 274 (a), 44 Stat. 9, 55; Act of May 29, 1928, c. 852, § 272 (a), 45 Stat. 791, 852; *Peerless Woolen Mills* v. *Rose*, 28 F. (2d) 661. For even in such case, if the Commissioner believes the assessment or collection of the tax will be endangered by delay, he may make an immediate jeopardy assessment and collect by distraint unless the taxpayer files a bond. Act of February 26, 1926, c. 27, § 279, 44 Stat. 9, 59; Act of May 29, 1928, c. 852, § 273, 45 Stat. 791, 854; *Salikoff* v. *McCaughn*, 24 F. (2d) 434. Compare *Burnet* v. *Chicago Ry. Equip. Co.*, 282 U. S. 295, 303. The paramount right of the United States to require immediate payment, or surety therefor, is not diminished.

process, if the opportunity given for the ultimate judicial determination of the liability is adequate. *Springer* v. *United States,* 102 U. S. 586, 593; *Scottish Union & National Ins. Co.* v. *Bowland,* 196 U. S. 611, 631. Delay in the judicial determination of property rights is not uncommon where it is essential that governmental needs be immediately satisfied. For the protection of public health, a State may order the summary destruction of property by administrative authorities without antecedent notice or hearing. Compare *North American Cold Storage Co.* v. *Chicago,* 211 U. S. 306; *Hutchinson* v. *Valdosta,* 227 U. S. 303; *Adams* v. *Milwaukee,* 228 U. S. 572, 584. Because of the public necessity, the property of citizens may be summarily seized in war-time. *Central Union Trust Co.* v. *Garvan,* 254 U. S. 554, 566; *Stoehr* v. *Wallace,* 255 U. S. 239, 245; *United States* v. *Pfitsch,* 256 U. S. 547, 553. Compare *Miller* v. *United States,* 11 Wall. 268, 296; *International Paper Co.* v. *United States,* 282 U. S. 399; *Russian Volunteer Fleet* v. *United States* 282 U. S. 481. And at any time, the United States may acquire property by eminent domain, without paying, or determining the amount of the compensation before the taking. Compare *Kohl* v. *United States,* 91 U. S. 367, 375; *United States* v. *Jones,* 109 U. S. 513, 518; *Crozier* v. *Fried. Krupp Aktiengesellschaft,* 224 U. S. 290, 306.[7]

The procedure provided in § 280 (a) (1) satisfies the requirements of due process because two alternative methods of eventual judicial review are available to the transferee. He may contest his liability by bringing an action, either against the United States or the collector, to recover the amount paid. This remedy is available where the transferee does not appeal from the determination of

---

[7] The same rule is applied to eminent domain proceedings by a State. *Sweet* v. *Rechel,* 159 U. S. 380; *Backus* v. *Fort Street Union Depot Co.,* 169 U. S. 557; *Williams* v. *Parker,* 188 U. S. 491; *Bragg* v. *Weaver,* 251 U. S. 57, 62; *Hays* v. *Port of Seattle,* 251 U. S. 233, 238; *Joslin Mfg. Co.* v. *Providence,* 262 U. S. 666, 677.

the Commissioner, and the latter makes an assessment and enforces payment by distraint; or where the transferee voluntarily pays the tax and is thereafter denied administrative relief. Compare *United States* v. *Emery, Bird, Thayer Realty Co.*, 237 U. S. 28, 31; *Wickwire* v. *Reinecke*, 275 U. S. 101, 105; *Williamsport Wire Rope Co.* v. *United States*, 277 U. S. 551, 560. Or the transferee may avail himself of the provisions for immediate redetermination of the liability by the Board of Tax Appeals; since all provisions governing this mode of review are made applicable by § 280. Compare *Routzahn* v. *Tyroler*, 36 F. (2d) 208, 209. Thus within sixty days after the Commissioner determines that the transferee is liable for an unpaid deficiency, and gives due notice thereof, the latter may file a petition with the Board of Tax Appeals. Act of February 26, 1926, c. 27, § 274 (a), 44 Stat. 9, 55; Act of May 29, 1928, c. 852, § 272 (a), 45 Stat. 791, 852. Formal notice of the tax liability is thus given; the Commissioner is required to answer; and there is a complete hearing *de novo* according to the rules of evidence applicable in courts of equity of the District of Columbia. Act of May 29, 1928, c. 852, § 601, 45 Stat. 791, 872. Compare *International Banding Machine Co.* v. *Commissioner*, 37 F. (2d) 660. This remedy may be had before payment, without giving bond (unless the Commissioner in his discretion deems a jeopardy assessment necessary). The transferee has the right to a preliminary examination of books, papers, and other evidence of the taxpayer; and the burden of proof is on the Commissioner to show that the appellant is liable as a transferee of property, though not to show that the taxpayer was liable for the tax. Act of May 29, 1928, c. 852, § 602, 45 Stat. 791, 873.[8] A review by the Circuit Court of Appeals of an adverse determination may be had; and assess-

---

[8] It is asserted that these latter provisions, added by the Revenue Act of 1928, could not render valid an assessment void under § 280 of the 1926 Act. But as the objection relates only to the remedy and the hearing before the Board was not held until November,

ment and collection meanwhile may be stayed by giving a bond to secure payment. Act of February 26, 1926, c. 27, § 1001, 44 Stat. 9, 109; Act of May 29, 1928, c. 852, § 603, 45 Stat. 791, 873. There may be a further review by this Court on certiorari. These provisions amply protect the transferee against improper administrative action. Compare *Hurwitz* v. *North,* 271 U. S. 40.

It is argued that such review by the Board of Tax Appeals and Circuit Court of Appeals is constitutionally inadequate because of the conditions and limitations imposed. Specific objection is made to the provision that collection will not be stayed while the case is pending before the Circuit Court of Appeals, unless a bond is filed; and also to the rule under which the Board's findings of fact are treated by that court as final if there is any evidence to support them.[9] As to the first of these objections, it has already been shown that the right of the United States to exact immediate payment and to relegate the taxpayer to a suit for recovery, is paramount. The privilege of delaying payment pending immediate judicial review, by filing a bond, was granted by the sovereign as a matter of grace solely for the convenience of the tax-

---

1928, that is, after the 1928 Act was in effect, any alleged defect was cured.

[9] *Avery* v. *Commissioner,* 22 F. (2d) 6, 7; *Geo. Feick & Sons Co.* v. *Blair,* 26 F. (2d) 540, 542; *Bishoff* v. *Commissioner,* 27 F. (2d) 91, 92; *Conklin-Zoone-Loomis Co.* v. *Commissioner,* 29 F. (2d) 698, 700; *E. G. Robichaux Co.* v. *Commissioner,* 32 F. (2d) 780, 781; *Meinrath Brokerage Co.* v. *Commissioner,* 35 F. (2d) 614, 616. The further objection that this mode of review may deprive the taxpayer of a jury trial contrary to the Seventh Amendment, is unfounded. Even in the alternative action to recover taxes alleged to have been illegally collected, the right "to a jury . . . is not to be found in the Seventh Amendment . . . but merely arises by implication from the provisions of § 3226, Revised Statutes, which has reference to a suit at law." *Wickwire* v. *Reinecke,* 275 U. S. 101, 105.

payer.[10] Nor is the second objection of weight. It has long been settled that determinations of fact for ordinary administrative purposes are not subject to review. *Johnson* v. *Drew,* 171 U. S. 93, 99; *Public Clearing House* v. *Coyne,* 194 U. S. 497, 508; *United States* v. *Ju Toy,* 198 U. S. 253, 263; *Red " C " Oil Co.* v. *North Carolina,* 222 U. S. 380, 394; *Mutual Film Co.* v. *Industrial Commission,* 236 U. S. 230, 246. Compare *Williamsport Wire Rope Co.* v. *United States,* 277 U. S. 551, 560. Save as there may be an exception for issues presenting claims of constitutional right, such administrative findings on issues of fact are accepted by the court as conclusive if the evidence was legally sufficient to sustain them and there was no irregularity in the proceedings. *Reetz* v. *Michigan,* 188 U. S. 505, 507; *Lieberman* v. *Van De Carr,* 199 U. S. 552, 562; *Douglas* v. *Noble,* 261 U. S. 165, 167; *Tagg Bros. & Moorhead* v. *United States,* 280 U. S. 420, 443.[11] The adequacy of the scope of review offered by the Revenue Act of 1926 in the case of a deficiency determined directly against the taxpayer was assumed in *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716; and this procedure is now thoroughly established.[12] Questions of fact involved in proceedings against transferees are no different or more complex than those often encountered in determining the direct liability of a tax-

---

[10] See *Williamsport Wire Rope Co.* v. *United States,* 277 U. S. 551, 562, Note 7; *Russell* v. *United States,* 278 U. S. 181, 186–87; *Old Colony Trust Co.* v. *Commissioner,* 279 U. S. 716, 721.

[11] Compare *Davis* v. *Massachusetts,* 167 U. S. 43, 48; *Gundling* v. *Chicago,* 177 U. S. 183, 187; *Fischer* v. *St. Louis,* 194 U. S. 361, 371.

[12] By November 1, 1930, 644 petitions for review under the Revenue Act of 1926 had been decided by the various circuit courts of appeals, and 671 petitions were pending. See statement of the Chairman of the Board of Tax Appeals in Hearing Before the Subcommittee of House Committee on Appropriations, 71st Cong., 3d Sess., January 7, 1931, pp. 19, 26.

payer.[13] The alternative judicial review provided is adequate in both cases.

*Second.* It is urged by *amici curiae* that the method of assessment and collection permitted by § 280 (a) (1) cannot be applied where, as in the case at bar, the transfer of assets, upon which the transferee's liability is based, occurred prior to the enactment of the Revenue Act of 1926; and, moreover, that if applied retroactively to such transfer, the section would be unconstitutional. The power of Congress to provide an additional remedy for the enforcement of existing liabilities is clear. Compare *Graham & Foster* v. *Goodcell,* 282 U. S. 409, 427. It is clear also that Congress intended that the section should be available for enforcing the liability of a transferee in respect to taxes " imposed . . . by any prior income, excess-profits, or war-profits tax Act," irrespective of the time at which the transfer was made. The need for a more effective and expedient remedy was not limited to liabilities of transferees thereafter arising. To have so limited the operation of the section would, at least as to earlier Acts, have seriously impaired the value of the new remedy.[14]

---

[13] Compare *Lonsdale* v. *Commissioner,* 32 F. (2d) 537; *Hoosier Casualty Co.* v. *Commissioner,* 32 F. (2d) 940; *Jacobs* v. *Commissioner,* 34 F. (2d) 233; *O'Meara* v. *Commissioner,* 34 F. (2d) 390; *Insurance & Title Guarantee Co.* v. *Commissioner,* 36 F. (2d) 842; *Penney & Long, Inc.,* v. *Commissioner,* 39 F. (2d) 849; *Barde Steel Products Corp.* v. *Commissioner,* 40 F. (2d) 412.

[14] There is no suggestion in the Committee Reports on the 1926 Act that § 280 was to be so limited. A contrary intention is perhaps indicated by subdivision (b) (2) which provided that where " the period of limitation for assessement against the taxpayer expired before the enactment of this Act but assessment against the taxpayer was made within such period," the Commissioner should have six years in which to make an assessment against the transferee, provided he could do so within one year after the enactment of the 1926

*Third.* It is contended that § 280 (a) (1) is invalid because the liability at law or in equity of a transferee is dependent upon the law of the State of incorporation, and that thus the section improperly delegates the federal taxing power to the state legislatures; and, further, that the tax liability of the transferee, as thus assessed and collected, violates the constitutional requirement of uniformity because differences in state laws may affect such liability. The extent and incidence of federal taxes not infrequently are affected by differences in state laws; but such variations do not infringe the constitutional prohibitions against delegation of the taxing power or the requirement of geographical uniformity. *Florida* v. *Mellon,* 273 U. S. 12, 17; *Crooks* v. *Harrelson,* 282 U. S. 55; *Poe* v. *Seaborn,* 282 U. S. 101, 117. Compare *Head Money Cases,* 112 U. S. 580, 594; *Clark Distilling Co.* v. *Western Maryland Ry. Co.* 242 U. S. 311, 327. We have, therefore, no occasion to decide whether the right of the United States to follow transferred assets is limited by any state laws.

*Fourth.* It is contended that summary proceeding by the United States to enforce the liability for the tax is barred by the six months statute of limitations on suits against stockholders provided by the Pennsylvania statute. Laws 1874, c. 32, § 15; Penn. Stat. (1920) § 5728. The United States is not bound by state statutes of limi-

Act. Moreover, in all cases, an additional period of one year after the expiration of the period for assessing the taxpayer, was given. Compare H. R. Rep. No. 356, 69th Cong., 1st Sess., February 22, 1926, p. 44. Subdivision (c) provides that in the case of corporations which had been dissolved, the period for assessment of the transferee was to be the same as if such "termination of existence had not occurred." These provisions clearly contemplated a dissolution and transfer of assets prior to the passage of the Act. Compare *United States* v. *Updike,* 281 U. S. 489, 494. In the case at bar, two assessments against the corporate taxpayer had been made prior to 1926.

tation unless Congress provides that it shall be. *United States* v. *Nashville, Chattanooga & St. Louis Ry. Co.*, 118 U. S. 120; *Chesapeake & Delaware Canal Co.* v. *United States*, 250 U. S. 123, 125; *E. I. du Pont de Nemours & Co.* v. *Davis,* 264 U. S. 456, 462. The detailed limitation periods specified in § 280 evidence the intention that they alone shall be applicable to the proceedings therein authorized.

*Fifth.* It is contended that, even if petitioners' are liable, the amount determined is excessive; and that the findings of the Board of Tax Appeals in the present case are insufficient to support an assessment of the entire balance of the deficiencies. It is first urged that the estate of Phillips can be assessed only for its pro rata share of the deficiency, according to the ratio which the stock held by him bore to the total outstanding stock of the corporate taxpayer at the time of dissolution. The argument is that the federal Equity Rules require that all stockholders be brought in as necessary parties and be proportionately subjected to liability. While it is permissible for a respondent to bring in other stockholders or transferees by a cross-bill,[15] this procedure is founded upon the desire not to burden the courts with a multiplicity of suits. Compare *Hatch* v. *Dana,* 101 U. S. 205, 211. Such rule of convenience is not applicable in summary administrative proceedings like that provided by § 280 (a) (1). One who receives corporate assets upon dissolution is severally liable, to the extent of assets received, for the payment of taxes of the corporation; and other stockholders or transferees need not be joined.[16]

---

[15] Compare Equity Rules 25, 39, 42; *Watson* v. *National Life & Trust Co.*, 162 Fed. 7.

[16] *Benton* v. *American National Bank*, 276 Fed. 368; *McWilliams* v. *Excelsior Coal Co.*, 298 Fed. 884. Compare *United States* v. *Boss & Peake Automobile Co.*, 285 Fed. 410, affirmed, 290 Fed. 167; *Capps Mfg. Co.* v. *United States*, 15 F. (2d) 528; *Pann* v. *United States*, 44

Non-joinder cannot affect or diminish the several liability of the stockholder or transferee sued. Compare *Benton v. American National Bank,* 276 Fed. 368.[17] The individual several liability of Phillips may be fully enforced by the United States in the present proceeding. Whatever the petitioners' right to contribution may be against other stockholders who have also received shares of the distributed assets, the Government is not required, in collecting its revenue, to marshal the assets of a dissolved corporation so as to adjust the rights of the various stockholders. There is nothing in § 280 to indicate that Congress intended to limit the procedure in this way. And any such requirement would seriously impair the efficiency of the summary method provided.

Petitioners assert also that the finding of the Board that the total assets of the corporation, amounting to $68,588.35, were paid " to its stockholders between July 25, 1919 and September 27, 1919," is insufficient to support the assessment against the estate of the entire remaining deficiency of $9,306.36. The argument is that there may have been several distributions within this period; that since there was no finding as to the existence of other creditors, it must be assumed that until the assets had been depleted below the amount due for taxes, the corporation was solvent; and that thus the stockholder-transferees did not become liable until the final $9,306.36 of assets was distributed. Hence it is claimed

F. (2d) 321. See also *Adams* v. *Perryman & Co.,* 202 Ala. 469; 80 So. 853; *Singer* v. *Hutchinson,* 183 Ill. 606, 620; 56 N. E. 388; *Kimbrough* v. *Davies,* 104 Miss. 722; 61 So. 697; *Bartlett* v. *Drew,* 57 N. Y. 587.

[17] It was conceded below that if the other stockholders are insolvent, or absent from the jurisdiction, or cannot be ascertained, they need not be joined. Compare *Kennedy* v. *Gibson,* 8 Wall. 498, 506; *Second National Bank of Erie* v. *Georger,* 246 Fed. 517, 520; *United States* v. *Armstrong,* 26 F. (2d) 227, 233.

that Phillips' liability for the tax is limited to a pro rata share of the assets finally distributed, that is, to one quarter of the unpaid deficiency. But the plain import of the findings is that there was a single distribution which took several months to complete; and there is no question that the entire assets were thereby distributed. Moreover, such argument, urged for the first time here, comes too late. For while the burden was on the Commissioner to prove before the Board that Phillips was liable as a transferee, the facts in the case at bar were stipulated; and it was agreed that the date of complete liquidation was September 27, 1919, by which time petitioners' decedent had received his full share of the distributed assets. Since it was stipulated that the final transfers of assets were without consideration; that they completely exhausted the corporate assets; that the balance of the deficiencies, assessed against the corporation, remains unpaid; and that the distributive dividend received by Phillips was in excess of the remaining tax liability, the burden resting upon the Commissioner was sustained.

*Affirmed.*