EDWARD T. SINGER *et al.*

*v.*

DILLON B. HUTCHINSON *et al.*

*Opinion filed February 19, 1900.*

1. CORPORATIONS—*a corporation represents its stockholders in bringing or defending suits.* A corporation represents its stockholders in the matter of bringing and defending suits respecting the rights and obligations of the corporation.

2. SAME—*construction of act of 1869, extending life of corporation two years.* The act of 1869, amending the general act of 1845 on abatement, (Laws of 1869, p. 1,) which provides that corporations whose charters "may have expired" shall continue their corporate capacity for a term of two years for the purposes of collecting debts and selling their property, applies to corporations created after the passage of the act as well as to those then existing.

3. SAME—*corporation may sell real estate within two years after expiration of charter.* Under the act of 1869, amending the general act of 1845 on abatements, a corporation has power to sell its real estate within two years after the expiration of its charter, and may employ an agent to find a purchaser.

4. SAME—*assets of corporation in hands of stockholders are liable for corporate debts.* The capital stock and property of a corporation is a trust fund for the payment of its debts, and assets of the corporation in the hands of stockholders are regarded in equity as the property of the corporation and subject to claims of its creditors.

5. JUDGMENTS AND DECREES—*judgment is binding upon parties and privies.* A judgment by a court of competent jurisdiction is conclusive of matters in controversy as between the parties and all persons represented by them.

6. RES JUDICATA—*when judgment against corporation binds its stockholders.* In the absence of fraud or want of jurisdiction a judgment against a corporation for commission earned in the sale of real estate is conclusive of the amount and validity of the claim, as against stockholders made defendants to a creditor's bill to reach corporate assets in their hands, where the suit was tried on its merits, under a plea of general issue by the corporation, supported by an affidavit of merits signed by the president.

7. CREDITOR'S BILL—*a corporation creditor need not make all stockholders defendants to creditor's bill.* A judgment creditor of a corporation has nothing to do with equities existing among stockholders, and in proceeding by creditor's bill to reach assets of the corporation in the hands of the stockholders he need not make all stockholders parties.

8. SAME—*effect where only part of stockholders are made parties.* Upon the filing of a creditor's bill against part of the stockholders to reach corporate assets in their hands, the defendants, if they desire an equitable distribution of the burden among all the stockholders, should file a cross-bill, or may file an original bill in an independent proceeding.

9. SAME—*what will not excuse filing of cross-bill by part of stockholders for equitable distribution of burden.* That all of the stockholders were originally joined in a creditor's bill to reach assets of the corporation does not excuse the filing of a cross-bill for equitable distribution of the burden among all stockholders, where the bill was subsequently dismissed as to part of them.

10. TRIAL—*when refusal of cross-examination is proper.* The court may properly refuse to permit a witness in a creditor's bill proceeding to be cross-examined, where the only direct testimony of such witness not excluded by the court consists of the statement that the complainants in the creditor's bill were the plaintiffs in the suit at law, which was unnecessary, the names being the same.

*Singer* v. *Hutchinson*, 83 Ill. App. 675, affirmed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. JOHN GIBBONS, Judge, presiding.

This is an appeal from a judgment of the Appellate Court affirming a decree rendered on a creditor's bill filed by appellees January 7, 1898, against the Singer & Talcott Stone Company and others, as defendants, to reach the assets of the Singer & Talcott Stone Company in the possession of the defendants, as stockholders. Edward T. Singer, Charles G. Singer, Walter Singer, Harriet A. Singer, Charles B. Kimball, Spencer Kimball and the Singer & Talcott Stone Company were made defendants to the bill. All defendants were served with process except Walter Singer and Charles B. Kimball, in respect to whom process was returned "not found." On the hearing the bill was dismissed as to Walter H. Singer, Harriet A. Singer, Charles B. Kimball and Spencer Kimball. Answers were filed by Edward T. Singer, Charles G. Singer, Harriet A. Singer and Spencer Kimball,—Harriet A. Singer denying that she ever was a stockholder in the

Singer & Talcott Stone Company or ever had anything
to do with its management, and Spencer Kimball aver-
ring that in the year 1875 he sold all his stock in the
corporation, and that since said time he has had no in-
terest in the corporation or any knowledge of its affairs.
The Singer & Talcott Stone Company failing to appear
and plead, answer or demur, a decree *pro confesso* was
taken against it.

The evidence shows that June 12, 1897, a judgment
was rendered in the superior court of Cook county in a
suit at law brought January 21, 1893, in which appellees
were plaintiffs and the Singer & Talcott Stone Company
was defendant, in favor of appellees, for the sum of $15,-
496.33 and costs; that August 10, 1897, an execution was
issued on said judgment, which execution was returned
by the sheriff November 8, 1897, "no property found."

The complainants read in evidence the following from
the joint and several answer of Edward T. Singer and
Charles G. Singer, which answer was verified by the joint
and several affidavit of the said defendants:   "These de-
fendants allege the facts to be, that from the time of the
expiration of the charter of the company, and for sev-
eral years before, it, the said corporation, had no prop-
erty whatever except the piece of real estate in said bill
mentioned and admitted to have been sold, all of the
other property that had ever belonged to said corpora-
tion having before that time been disposed of, and the
proceeds thereof having been distributed among its stock-
holders in accordance with their respective rights.   The
defendants further allege the fact to be, that on January
3, 1893, for the purpose of disposing of all the property
of said corporation and absolutely winding up the affairs
of said corporation, and distributing among its stock-
holders, according to their respective rights, all of the
assets of said corporation, the said real estate was sold
and disposed of; and defendants admit that on or about
the 3d of January, 1893, the Singer & Talcott Stone Com-

pany conveyed to one Charles A. Chapin the property
in said bill described, for the consideration of $509,178,
which consideration was received partly in money and
partly in promissory notes secured by mortgages on divers
pieces of real estate, and said deed of conveyance was
executed on behalf of said company by Edward T. Singer,
as president, and Charles G. Singer, as secretary of said
company. And these defendants, further answering, aver
that said consideration for said conveyance was received
by these defendants for the Singer & Talcott Stone Com-
pany, and the entire net proceeds thereof were immedi-
ately thereafter, and on or about the sixth day of January,
1893, distributed to and among the several stockholders
of said company in proportion to the amount of stock in
said company held by said stockholders, respectively; to
this defendant Edward T. Singer, $130,500; to this de-
fendant Charles G. Singer, $55,000; to Walter H. Singer,
$88,500; to Horace M. Singer, now deceased, $17,000; and
to these defendants Edward T. Singer, Charles G. Singer
and Walter H. Singer, jointly, as trustees and in trust,
to pay the income thereof to Harriet Singer so long as
she shall live, $203,637,—the capital stock of said com-
pany consisting of three hundred shares of $100 each.
Before having been divided, the same was held as fol-
lows: Said Edward T. Singer, eighty shares; said Wal-
ter H. Singer held fifty-five shares; the said Charles G.
Singer held thirty-five shares; Horace M. Singer, now
deceased, held ten shares; the said Edward T. Singer,
Charles G. Singer and Walter H. Singer held as trustees,
jointly, one hundred and twenty shares; that the persons
so named as receiving said proceeds of said sale consti-
tuted the sole and only stockholders of said corporation
at the time of said distribution and at the time of the
expiration of its charter as aforesaid, and for several
years prior to that time. These defendants, further an-
swering, admit that they claim, and they aver that it
was true in fact, that the Singer & Talcott Stone Com-

pany is and was a dissolved corporation, and that such dissolution occurred before and without the payment of any such sum of money whatever to said complainants; that said defendants took no notice, and were not bound to take any notice, of said supposed judgment, and they allege that said supposed judgment did not exist at the time of the dissolution of said corporation or for many years thereafter, and that also, at the time of the said distribution of the proceeds of the consideration of said conveyance above set forth, no claim had been made by said complainants, or either of them, upon said corporation, its officers or agents; and they deny that there was any sum of money due or to become due from said corporation to said complainants, or either of them, on account of services in making such sale, or upon any other account whatever; and they deny that during the life of said corporation, or prior to its dissolution, as aforesaid, said complainants, or either of them, had or pretended to have any claim or demand against said corporation; and on information and belief they deny that the Singer & Talcott Stone Company, at any time since the expiration of its charter, as aforesaid, had any corporate existence or capacity, by statute or otherwise, to be sued by said complainants; and they allege the fact to be, that if there is or was any statute whatever which continued the capacity of said corporation after the 20th of April, 1892, for the purpose of being sued, such suit could be maintained under such statute only upon a claim that existed against said corporation at the date last aforesaid, and that such complainants had not, at that date or at any time prior thereto, any claim whatever against said corporation, or its corporate assets or trust funds, still liable to be sued, prosecuted or followed in this proceeding by said complainants for the payment of said proposed judgment; and they deny that the other defendants herein, or either of them, are liable to be sued or prosecuted, as aforesaid; and they deny that good or

proper service upon said corporation was made in this
cause, and allege that owing to its dissolution, as above
set forth, no proper service could be made upon said cor-
poration at or since the time of the commencement of
this suit."

Complainants called as a witness appellee William W.
Post, who testified, in substance, that he and Hutchinson,
the complainants in the present bill, were the plaintiffs
in the suit in which the judgment above mentioned was
recovered, and that no part of the judgment had been
paid.   The witness was also examined, and testified at
considerable length, as to the facts on which the judg-
ment was recovered.   Subsequently, and before complain-
ants closed their evidence, the court excluded all of
Post's evidence which did "not go simply to identify the
cause and the parties," meaning, presumably, to let stand
only that part of the testimony showing that the com-
plainants in the bill were the plaintiffs in the judgment.
Appellees also put in evidence the articles of incorpora-
tion of the Singer & Talcott Stone Company, and a war-
ranty deed from .that company to Charles A. Chapin, of
Niles, Michigan, of date January 3, 1893, for the consid-
eration of $509,178, of lots 29 to 33, both inclusive, except
the north ten feet of lot 33 lying west of the east thirty-
five feet thereof, in block 89, school section addition to
Chicago, county of Cook and State of Illinois, signed by
Edward T. Singer, as president, and Charles G. Singer,
as secretary, and impressed with the corporate seal of
the Singer & Talcott Stone Company.

The defendants (appellants here) offered evidence
tending to show that the appellees were not entitled to
recover in the action at law,—in other words, such evi-
dence as might have been admissible in that suit,—which
evidence the court excluded.

The ordering part of the decree is as follows:   "It is
therefore ordered and decreed by the court, that the bill
of complaint herein be and the same is hereby dismissed

without prejudice as to the defendant Harriet A. Singer; and it is further ordered, adjudged and decreed by the court that the defendants Edward T. Singer and Charles G. Singer and the Singer & Talcott Stone Company pay to the complainants, Dillon B. Hutchinson and William W. Post, for the use of said Post, within ten days from this date, $16,639.66, with lawful interest thereon from date until paid, and the costs of this suit to be taxed by the clerk of this court, and that this decree for the payment to be made, as aforesaid, shall be and is hereby made joint and several as to each of the three defendants, Edward T. Singer, Charles G. Singer and the Singer & Talcott Stone Company, until the whole of said amounts so decreed to be paid shall be collected or paid under this decree; that the complainants, for the use of the complainant William W. Post, may have execution accordingly for the collection of said amount."

IRA W. & C. C. BUELL, (A. B. JENKS, of counsel,) for appellants.

BARNUM, MOTT & BARNUM, (T. A. MORAN, of counsel,) for appellees.

Mr. JUSTICE CRAIG delivered the opinion of the court:

It is first claimed by appellants in the argument that the judgment recovered in the law court against the stone company is not proper evidence of the existence of a claim against the corporation to charge property in good faith distributed to appellants, they not being parties thereto. It is a well settled rule that a judgment rendered in a court of competent jurisdiction is conclusive between parties and privies in regard to all matters of controversy determined by the judgment, and all persons represented by the parties, both plaintiff and defendant, are bound and concluded as privies by the judgment which may be rendered. It is also a well settled rule that a corporation represents the stockholders in all matters

within the scope of its corporate powers transacted in good faith by the officers of the corporation. Among the conceded powers of corporations may be mentioned those of bringing and defending actions in regard to the rights and obligations of the corporation. *Bissit* v. *Kentucky River Navigation Co.* 15 Fed. Rep. 353, is an interesting case on this question, where the authorities are fully cited and commented upon in a note.

This was a creditor's bill by a creditor who had reduced his claim to judgment against the Singer & Talcott Stone Company, brought against the corporation and its stockholders, to reach assets belonging to the corporation which had been turned over by the officers of the corporation to the stockholders in fraud of the rights of creditors, and it is not claimed that the judgment against the corporation was obtained by fraud, or that there was a want of jurisdiction in the court in which the judgment was rendered. In the absence of fraud in obtaining the judgment against the corporation, and in the absence of a want of jurisdiction in the court wherein the judgment was rendered, we think the judgment in a case of this character was conclusive against the stockholders as to the amount and validity of the claim of the creditor.

Three other grounds are relied upon to reverse the judgment of the Appellate Court: First, that the finding of the court, in the decree, that the stone company employed appellees before the expiration of its charter and while it had power so to do is not supported by any evidence in the case; second, that none of the living solvent stockholders who were parties defendant should have been dismissed out of court, but the decree (if appellees had been entitled to any) should have been that such stockholders pay the claim by a *pro rata* contribution; and third, that the appellants offered, by cross-examination of Post and by questions put to their own witnesses and by tender of evidence for the defense, to show that the appellees' claim did not arise at the time

Post testified that it did, that that claim was without merit, and that appellees never had any claim against the corporation. These questions were fully discussed by Mr. Justice ADAMS of the Appellate Court in the following opinion, in which we concur:

"The court, in its decree, found as follows in respect to the claim of appellees, which was the foundation of their judgment against the Singer & Talcott Stone Company: 'Said claim so reduced to judgment, and the liability of said company, were legitimately incurred by said company, in the exercise of said company's corporate capacity and power, in and about the selling and disposing of its corporate property, and was so incurred by the employment by the Singer & Talcott Stone Company of the complainants herein on or about January 10, 1892, as real estate brokers, to procure for said company a purchaser for its said above described real estate,' etc.

"The Singer & Talcott Stone Company was organized under 'An act to authorize the formation of corporations for manufacturing, mining, mechanical or chemical purposes,' approved and in force February 18, 1857. The company was organized April 20, 1872, and the term of its corporate existence was fixed by its articles of association, and the license issued in pursuance thereof, at twenty years, viz., until April 20, 1892. The specific objection to the above finding of the court is, that, excluding the evidence of Post, there is no evidence to justify the finding that appellees were employed by the Singer & Talcott Company prior to April 20, 1892. The pleadings in the lawsuit in which the judgment against the Singer & Talcott Stone Company was recovered by appellees, consisting of a declaration and a plea of the general issue, were put in evidence by appellees. The declaration contains a special count, in which is averred the employment of appellees by the company to procure for the company a purchaser of certain described real estate owned by it, at $10 per square foot or at such price

as would be satisfactory to the company,—appellees, for procuring such purchaser, to receive two and one-half per cent of the price paid,—and that appellees did procure such purchaser at a price satisfactory to the company, etc.

"The company was sued and declared against by the name 'Singer & Talcott Stone Company, a corporation,' and filed a plea of the general issue in that name, supported by an affidavit of merits by Edward T. Singer, in which affidavit the affiant states that he is the president of the Singer & Talcott Stone Company. The record of the judgment shows that the company, by its attorney, moved for a new trial and in arrest of judgment, and argued those motions, from all of which it appears that the cause was tried and judgment rendered on the merits. The judgment so rendered is conclusive that all matters essential to a recovery were proved. The action was assumpsit, and it was necessary to appear that the defendant, the Singer & Talcott Stone Company, had made a contract with the plaintiffs which it had the corporate capacity to make. It was, under the pleadings, clearly competent for the stone company to show, if such was the case, that the contract under which the plaintiffs claimed was not within the corporate power of the company; that it was *ultra vires*, and, therefore, that in legal contemplation there was no contract. A judgment is conclusive as to all defenses provable under the issues. 2 Black on Judgments, sec. 609.

"The judgment being conclusive as against the company, and, therefore, against the appellants, that the company had the corporate capacity to make the contract on which the judgment was based, then if the company had not such corporate capacity after April 20, 1892, as assumed by appellants' counsel, the court was fully warranted by the record of the lawsuit in finding that the liability of the company was incurred prior to April 20, 1892.

"In support of the contention that no liability occurred prior to April 20, 1892, counsel for appellants rely on the averment in the declaration, 'that on the first day of June, 1892, in consideration that said plaintiffs, at the request of said defendant, would procure a purchaser,' etc. But it is elementary that a statement of the precise time is not necessary and that a plaintiff is not bound to prove the precise time stated. 'Thus, in assumpsit upon a contract, the day upon which it is made being alleged only for form, the plaintiff is at liberty to prove that the contract, whether it be express or implied, was made at any other time.' (1 Chitty's Pl.—9th Am. ed.—257; see, also, *Kipp* v. *Bell*, 86 Ill. 577.) Such being the law, it can not be assumed that the precise time laid in the declaration was the time proved on the trial.

"Section 1 of 'An act to amend an act entitled 'Abatements,' approved March, 1845, and to extend the time for closing up the affairs of corporations,' in force March 24, 1869, (Sess. Laws of 1869, p. 1,) is as follows: '*Be it enacted by the People of the State of Illinois, represented in the General Assembly:* That all corporations created by special acts or under general laws, and whose charter or acts of incorporation may have expired for any reason whatever, shall continue their corporate capacity during the term of two years for the sole purpose of collecting the debts due to said corporation, selling and conveying the property and estate thereof.' If this act applies to the Singer & Talcott Stone Company, then that company had power, for at least two years after April 20, 1892, to sell and convey its property; but appellants' counsel, basing their argument on the words 'may have expired,' contend that it does not apply to that company but only to corporations created prior to its passage, and that the Singer & Talcott Stone Company was organized April 20, 1872, subsequently to the passage of the act. We cannot accede to this view. The act is general, applies in terms to all corporations, and is in part amend-

atory of chapter 1 of the Revised Statutes of 1845, entitléd 'Abatements,' which is a general law; and section 1, quoted *supra,* confers a special privilege, namely, an extension of corporate life for two years beyond the time fixed by the charter. No reason is perceived why the legislature should discriminate in favor of corporations organized prior to the passage of the act and against those thereafter organized. In *Ramsey* v. *Peoria Marine and Fire Ins. Co.* 55 Ill. 311, the court, commenting on the act in question, say: 'It was evidently the intention of the legislature to preserve to corporations whose charters might be forfeited or their organization dissolved, the right to collect their debts and sell their property,' etc. (Ibid. p. 316.)

"In *Life Association of America* v. *Fassett,* 102 Ill. 315, one of the questions presented was, whether the corporate life of the association, which was a Missouri corporation, had become extinct by reason of a decree of the circuit court of St. Louis, entered October 16, 1879, declaring it insolvent and dissolving it. October 15, 1879, prior to the entry of the decree, an attachment had been levied on the land of the association in this State. The court, after referring to sections 10 and 25 of chapter 32 of the statutes, by the former of which sections the corporate capacity of corporations is extended as by section 1 of the act of 1869, say: 'From these and other provisions of the statute it clearly appears that it is a part of the settled policy of the State, at least so far as domestic corporations are concerned, that upon their dissolution, however that may be effected, they shall nevertheless be regarded as still existing for the purpose of settling up their affairs and having their property applied for the payment of their just debts, and we see no sufficient reason why the same policy should not, so far as practicable, be extended to foreign corporations that have property here and are located among us for business purposes.'

"We have no doubt that section 1 of the act of 1869 applies equally to corporations organized before and after its passage, which being true, the Singer & Talcott Stone Company had ample power to sell and convey its property at any time between April 20, 1892, and April 20, 1894, and it evidently acted with this understanding, the deed of the land from the company to Chapin being dated January 3, 1893, and sealed with the corporate seal of the company. And if it had power to sell it had power to employ an agent for that purpose. Indeed, being a corporation, it could act only by an agent.

"The special count in the declaration in the lawsuit is for commissions earned by appellees in the procuring the purchaser of the company's property, and the copy of the account sued on, which is, in substance, a bill of particulars, is for commissions earned in procuring the purchaser for the property, describing it, and limited appellees to proof of that claim. What has been said disposes of appellants' second and third objections.

"The objection that it was error to dismiss the bill against some of the defendant stockholders, and that the decree should have been that the claim of appellees should be paid by all the stockholders, they contributing ratably, is untenable. This is a creditor's bill, and not a bill under section 25 of the Incorporation act to dissolve and close up the business of the corporation, and it is not necessary to make all stockholders defendants. *Young* v. *Farwell,* 139 Ill. 326; *Palmer* v. *Woods,* 149 id. 146; *Bartlett* v. *Drew,* 57 N. Y. 587; *Hatch* v. *Dana,* 101 U. S. 205.

"The case of *Bartlett* v. *Drew, supra,* (approved in 104 Ill. 35,) was in its facts similar to the case at bar. In that case the plaintiffs had recovered a judgment against the New Jersey Steam Navigation Company, and an execution had been issued on the judgment and returned unsatisfied. Prior to the commencement of the suit in which the judgment was recovered, the navigation company had sold three of its steamboats and distributed

the proceeds of the sale, $750,000, among its stockholders. The action was brought against the corporation and Daniel Drew, a stockholder, who had received as his share in the proceeds of the sale a much larger amount than the plaintiff's judgment. Drew objected, as do the appellants here, that the suit should be against all the stockholders, to the end that each might contribute his proportion of the plaintiff's judgment. The court overruled the objection, saying, among other things: 'We are of opinion that the plaintiff's right of action rests upon a very plain principle of equity. This is not a proceeding to dissolve and wind up the affairs of a corporation, or to marshal its assets, but the ordinary proceeding to collect a debt from a debtor unwilling to pay.   *   *   * It is a very plain proposition that the stock and property of every corporation is to be regarded as a trust fund for the payment of its debts, and its creditors have a lien and the right to priority of payment over any stockholder. When stock and property have been divided between stockholders before all the debts of the corporation have been discharged, if any one stockholder is compelled to pay more than his fair share of any unpaid debt he may resort to his associates for equitable contribution; but with that proceeding the creditor has nothing to do, unless he chooses to intervene to settle equities that may exist between his debtors.'

"That the capital stock and property of a corporation is a trust fund for the payment of its debts is fundamental in equity, and has been expressly recognized by the Supreme Court. (*Clapp* v. *Peterson*, 104 Ill. 26; *Coleman* v. *Howe*, 154 id. 458.) Equity regards the assets of a corporation in the hands of stockholders as the property of the corporation and subject to the claims of creditors of the corporation. In *Bartlett* v. *Drew, supra*, the court say: 'Drew had a large amount of the assets in his possession which belonged to the corporation when the plaintiff's demand accrued, and some portion of which should have

been applied in discharge of its obligation to the plaintiff.' The Supreme Court of this State has also decided that a judgment creditor, complainant in a creditor's bill, has nothing to do with the equities as between the stockholders, and that when part, only, of the stockholders are made defendants, their remedy, if they desire equitable distribution of burden, is to file a cross-bill. (*Clapp* v. *Peterson,* 104 Ill. 26; *Coleman* v. *Howe,* 154 id. 458.) In the present case no cross-bill was filed nor was leave asked to file one. If it be suggested that this was unnecessary because all stockholders were originally parties to the bill, the obvious answer is, that appellees, having the right to proceed against part of the stockholders, clearly had the right to dismiss as to any of them, and the appellants were not warranted in presuming that they would not so do, and in omitting, on such presumption, to file a cross-bill. However, the remedy of appellants for equitable distribution of the burden of payment is not lost by this omission. They may file an original bill for that purpose, if they see fit so to do.

"Appellants further object to the refusal of the court to permit cross-examination of the witness Post, and to the exclusion of evidence offered by them on the merits of the claim of appellees which was reduced to judgment. All of Post's evidence having been excluded except that part of his testimony that the complainants in the present suit were the plaintiffs in the lawsuit, which evidence was unnecessary, the names being the same, the case stood as if Post had not been examined, and there was no ground for cross-examination. The evidence offered by appellants was properly excluded, because, the judgment being conclusive against them, they had no right to a re-trial of the suit at law. The evidence showed that each of the appellants has in his possession money of the Singer & Talcott Stone Company in amount largely in excess of the judgment against the company."

The judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*