Samuel Napsky (Alleged Transferee), et al. [1] v. Commissioner. Napsky v. Commissioner
Docket Nos. 5216-63 - 5222-63, 5237-63 - 5243-63, 831-64 - 852-64.
United States Tax Court
T.C. Memo 1965-284; 1965 Tax Ct. Memo LEXIS 45; 24 T.C.M. (CCH) 1578; T.C.M. (RIA) 65284; October 27, 1965
*45 Petitioners each owned a 12 1/2 percent interest in 11 corporations of a group of 90 corporations utilized by Joseph Brickman in constructing houses in large real estate subdivisions in the Chicago area. Each corporation was designated to build houses on 14 to 18 lots. When the houses were all sold, the corporations were dissolved and their assets were distributed to the stockholders in liquidation. Held, respondent did not err in disallowing the $25,000 surtax exemptions claimed by each of the corporations and allocating one surtax exemption among them in the manner he did. Held, further, petitioners are liable for the unpaid taxes of the 11 corporations as transferees to the extent of the liquidating distributions they received from the corporations. Bernard H. Sokol, One N. LaSalle St., Chicago, Ill., for the petitioners. James E. Caldwell, for the respondent. DRENNEN
Memorandum Findings of Fact and Opinion DRENNEN, Judge: This is a consolidated proceeding arising from respondent's determination that the petitioners, Samuel Napsky and Morley Brickman, are liable as transferees for unpaid income tax deficiencies and interest of each of 11 transferor corporations, viz., Units 22 *46 and 23 of Brickman Home Builders, Inc., and Units 219 to 227, inclusive, of Lawrence Avenue Highlands, Inc., to the extent of the fair market value of the assets received from them in liquidation of the corporations. The following table reflects respondent's determination as to (1) the unit corporation involved, (2) the docket number, (3) the taxable period or taxable year ended, (4) the transferor unit corporation's deficiency, and (5) the amount of petitioners' transferee liability: Unit
Taxable period
corpo-
Docket
or taxable
Transferor
Transferee
ration
No.
year ended
deficiency
liability
22
831-64
Aug. 31, 1958
$ 318.18
$ 318.18
852-64
23
832-64
Aug. 31, 1958
87.66
87.66
851-64
219
5216-63
Jan. 22, 1957 to Aug. 31,
1,196.96
1,196.96
1957
5237-63
219
850-64
Aug. 31, 1958
$4,473.00
4,978.85
2,820.87
833-64
Sept. 1, 1958 to May 21,
505.85
1959
220
834-64
Sept. 30, 1958
1,884.70
1,884.70
849-64
220
5217-63
Jan. 22, 1957 to Sept. 30,
2,431.50
2,093.82
1957
5238-63
221
5218-63
Feb. 16, 1957 to Nov. 30,
1,340.57
1,340.57
1957
5239-63
221
848-64
Nov. 30, 1958
3,504.34
3,515.99
2,296.17
835-64
Dec. 1, 1958 to May 19,
11.65
1959
222
5219-63
Feb. 16, 1957 to Oct. 31,
2,876.90
2,401.80 [1]
1957
5240-63
222
847-64
Oct. 31, 1958
2,248.67
2,248.67
836-64
223
5241-63
Feb. 16, 1957 to Oct. 31,
3,477.80
2,498.77
1957
5220-63
223
846-64
Oct. 31, 1958
1,882.21
1,882.21
837-64
224
5242-63
Feb. 25, 1957 to Oct. 31,
1,568.98
1,568.98
1957
5221-63
224
845-64
Oct. 31, 1958
3,883.70
2,536.98
838-64
225
5222-63
Feb. 25, 1957 to Jan. 31,
34.44
34.44
1958
5243-63
225
844-64
Jan. 31, 1959
88.75
88.75
839-64
226
840-64
Jan. 31, 1959
2,464.51
1,869.08
843-64
227
841-64
Jan. 31, 1959
2,233.91
2,233.91
842-64
*47 The issues for decision are (1) whether, for the taxable years and periods involved, petitioners are liable as transferees of the assets of the unit corporations involved in these proceedings for the deficiencies in income taxes of each of the transferor unit corporations, and (2) whether respondent erred in disallowing a separate $25,000 surtax exemption to each of the 11 unit corporations involved and allocating a single surtax exemption among these 11 corporations and 79 other corporations utilized by Joseph Brickman in his real estate enterprise. Findings of Fact Some of the facts were stipulated and are found accordingly. The stipulation of facts and exhibits attached thereto are incorporated by this reference. For the respective taxable periods involved the transferor unit corporations filed Federal income tax returns with the district director of internal revenue, Chicago, Ill. The transferor unit corporations 22 and 23, Brickman Home Builders, Inc., and 219 through 227, Lawrence Avenue Highlands, Inc., during the taxable years in question were 11 of *48 some 90 corporations formed and controlled by Joseph Brickman (hereinafter referred to as Joseph), a real estate developer in the Chicago area. The unit corporations involved were incorporated under the laws of the State of Illinois on the following dates: Unit
For the taxable year [1]
Date incorporated
22
Nov. 30, 1956
23
Nov. 30, 1956
219
Jan. 22, 1957
220
Jan. 22, 1957
221
Feb. 16, 1957 to Nov. 30, 1957
Jan. 16, 1957
221
Dec. 1, 1958 to May 19, 1959
Feb. 16, 1957
222
Feb. 16, 1957 to Oct. 31, 1957
Jan. 16, 1957
222
Nov. 1, 1957 to Oct. 31, 1958
Feb. 16, 1957
223
Feb. 16, 1957
224
Feb. 25, 1957
225
Feb. 25, 1957
226
Feb. 25, 1957
227
Feb. 25, 1957
The officers and directors of the unit corporations [2] were Joseph, president; Samuel Napsky (one of the petitioners, hereinafter referred to as Napsky), vice president; Morley Brickman (one of the petitioners, hereinafter referred to as Morley), secretary. The articles of incorporation and bylaws of the unit corporations were substantially identical. The corporate address for all of the 90 corporations, including the unit corporations, was 7830 West Lawrence Avenue, Chicago 31, Ill. Although each unit corporation kept separate books, one general office *49 staff handled the books of all the corporations from the business office at 7830 West Lawrence Avenue. Each unit corporation was on an accrual basis of accounting, and returns for each unit corporation were filed on a fiscal year basis. Joseph had been in the real estate development business on a large scale in the Chicago area for a number of years prior to 1957. In about 1950 he was involved in a real estate development which utilized only one corporation to construct the entire subdivision. All of the lumber for the project was to be bought under contract from one supplier. When prices rose, the supplier failed to deliver the required lumber and the corporation had to acquire its lumber from other suppliers at higher prices. The corporation was unable to get the Veterans' Administration to increase the prices at which the houses could be sold. As a result Joseph lost a considerable sum of money in the venture. Napsky had worked as a salesman for Joseph in previous *50 real estate ventures, and he sold houses on a commission basis. Joseph was anxious to have Napsky work for him for a salary plus bonus, and he was also interested in having Napsky acquire a proprietary interest in the real estate development then under construction. However, Joseph insisted that he should maintain control over all the corporations, so Napsky purchased a 12 1/2 percent stock interest in the unit corporations, and Morley (Joseph's son) purchased a similar 12 1/2 percent stock interest in the same 11 corporations. Joseph retained the remainder 75 percent stock interest in the unit corporations and also owned a 100 percent interest in the remaining 79 corporations. The unit corporations were engaged in real estate construction in a large subdivision. Each unit corporation was designated to construct 14 to 18 contiguous residences on a given street within the developed subdivision. The houses in the entire subdivision were built on a mass construction basis, whereby construction was initiated on lots on a particular street within the subdivision and work progressed lot by lot until the entire tract was completed. Houses of each unit corporation were advertised for sale *51 without specific reference to the particular unit corporation involved, although an allocation for advertising expense was deducted on the return filed by each unit corporation. Sales of residences were effected through escrows in which the appropriate unit corporation was designated as a selling party and deeds ran from the corporation to the individual grantee involved. Each unit corporation was dissolved when the last house in the unit corporation was sold, and the assets of the unit corporation were then distributed to the shareholders. The following table, which summarizes the distributions to the transferees, reflects (1) the transferor unit corporation, (2) the date of the distribution, (3) the kind of distribution, (4) the capital stock surplus on the date of distribution, (5) the amount distributed to each transferee, and (6) the capital stock surplus immediately after the distribution: Capital
Transferor
Date of
stock surplus
unit
distribution
Kind of
on date of
corporation
to transferee
distribution
distribution
22
6/10/59
Cash
$ 6,560.36
2/23/60
Adjusted final
distribution
(821.54)
23
6/10/59
Cash
10,001.94
2/23/60
Adjusted final
distribution
(431.64)
219
8/19/58
Cash
29,593.09
5/21/59
6,066.93
220
8/19/58
Cash
27,058.14
4/30/59
250.60
221
8/19/58
Cash
29,785.89
5/19/59
2,369.39
222
8/19/58
Cash
29,844.20
4/29/59
3,205.38
223
8/26/58
Cash
30,286.51
4/29/59
3,990.17
224
8/26/58
Cash
29,036.60
4/29/59
3,295.80
225
8/26/58
Cash
35,919.81
1/29/60
687.13
226
8/26/58
Cash
25,872.92
1/26/60
Adjusted final
distribution
(47.40)
227
1/29/60
Cash
35,183.66
*52 Amount distributed to each transferee
Transferor
Capital stock
unit
Joseph M.
Sam
Morley
immediately
after
corporation
Brickman
Napsky
Brickman
distribution
22
$ 5,250.00
$ 875.00
$ 875.00
($ 439.64)
(620.66)
(100.44)
(100.44)
0
23
6,750.00
1,125.00
1,125.00
1,001.94
(338.73)
(56.46)
(56.45)
0
219
18,000.00
3,000.00
3,000.00
5,593.09
4,550.19
758.37
758.37
0
220
18,000.00
3,000.00
3,000.00
3,058.14
187.96
31.32
31.32
0
221
18,000.00
3,000.00
3,000.00
5,785.89
1,777.05
296.17
296.17
0
222
18,000.00
3,000.00
3,000.00
4,844.20
2,401.79
401.80
401.79
0
223
18,000.00
3,000.00
3,000.00
6,286.51
2,992.63
498.77
498.77
0
224
18,000.00
3,000.00
3,000.00
5,036.60
2,471.85
411.97
411.98
0
225
18,000.00
3,000.00
3,000.00
11,919.81
515.35
85.89
85.89
0
226
18,000.00
3,000.00
3,000.00
1,872.92
(35.55)
(5.93)
(5.92)
0
227
18,962.74
3,160.46
3,160.46
0
On their returns each unit corporation claimed a separate surtax exemption for each year. In the notices of deficiency, respondent disallowed the surtax exemption claimed by each unit corporation, but allocated one $25,000 surtax exemption among the unit corporations for the year 1957. For the year 1958 respondent allocated $24,000 of the surtax exemption to unit corporation 225, the remaining $1,000 being allocated to unit corporation 205, one of Joseph's *53 corporations in which petitioners did not have any stock interest; for the year 1959 respondent allocated $10,000 to unit corporation 225, the remaining $15,000 being allocated to unit corporation 29, another one of Joseph's corporations in which petitioners did not have any stock interest. Petitioners claim that each corporation is entitled to a separate surtax exemption, as reported on their returns, but also claim that if only one surtax exemption is allowable for each year, the entire amount thereof should be allocated among these 11 corporations in a manner that would be most useful to them. The following table reflects (1) the net income, (2) the surtax exemption allocated by respondent, (3) the loss carryback claimed by petitioner, and (4) the surtax exemption allocation claimed by petitioner, for each unit corporation for the years 1957 through 1959, in the event a single surtax exemption is allocated among these 11 unit corporations: Surtax
Loss
Surtax exemp-
exemption
carryback
tion alloca-
Unit
allocated
claimed
tion claimed
corporation
Net income
by respondent
by petitioner
by petitioner
1957
22
$ 4,372.12
0
$ 540.87
$ 3,831.25
23
10,247.79
0
2,017.51
4,166.67
219
9,607.34
$ 4,166.66
0
4,166.66
220
15,582.19
4,166.66
153.69
4,166.66
221
10,260.19
4,166.67
0
335.42
222
17,243.50
4,166.67
10.92
4,166.67
223
20,043.18
4,166.67
28.92
0
224
11,405.62
4,166.67
45.36
4,166.67
225
0
0
0
0
226
0
0
0
0
227
0
0
0
0
1958
22
$ 1,446.26
0
0
$ 1,446.26
23
398.46
0
0
398.46
219
20,331.82
0
0
1,000.00
220
8,566.81
0
0
7,000.00
221
15,928.84
0
0
0
222
10,221.22
0
0
2,000.00
223
8,555.52
0
0
601.54
224
17,653.18
0
0
2,500.00
225
24,156.53
$24,000.00
$ 4.81
0
226
10,569.60
0
287.73
5,000.00
227
26,811.02
0
0
5,053.74
1959
22
$ (540.87)
0
0
0
23
(2,017.51)
0
0
0
219
2,299.31
0
0
$ 2,299.31
220
(153.69)
0
0
0
221
52.96
0
0
52.96
222
(10.92)
0
0
0
223
(28.92)
0
0
0
224
(45.36)
0
0
0
225
10,403.39
$10,000.00
0
1,291.30
226
11,202.30
0
0
11,202.30
227
10,154.13
0
0
10,154.13
*54 Each of petitioners executed transferee agreements (Form 2045), [3] acknowledging transferee liability for the income taxes of various of the corporations for various of the years here involved. [4] The agreements signed by petitioners provide in part as follows: In consideration of the Commissioner of Internal Revenue not issuing a statutory *55 notice of deficiency to and making an assessment against the above-named transferor corporation, the undersigned admits that it is the transferee of assets received from said transferor corporation, and assumes and agrees to pay the amount of any and all Federal income, excessprofits, or profits taxes finally determined or adjudged as due and payable by the above-named transferor corporation for the taxable year (or years) ended , to the extent of its liability at law or in equity, as a transferee within the meaning of Section 6901 of the Internal Revenue Code of 1954 and corresponding provisions of prior internal revenue laws; Ultimate Findings of Fact The corporations here involved were formed for the principal purpose of evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such corporations would not otherwise enjoy. Respondent's disallowance of separate surtax exemptions to each of the 11 unit corporations and the allocation of a single surtax exemption or a part thereof among these corporations was not unreasonable, arbitrary, or capricious. Opinion Petitioners were minority stockholders, holding a 12 1/2-percent *56 interest each, in 11 of 90 corporations (referred to as numbered units) formed by Joseph to construct and sell residential houses in the large real estate development enterprise controlled by him. Joseph owned the remaining 75-percent interest in each of the 11 corporations and a 100-percent interest in the remaining corporations. Each corporation, or unit, was designated to construct 14 to 18 contiguous residences on a given street within a subdivision and to be liquidated when those residences were sold. Petitioners received cash distributions in liquidation from each of the 11 corporations, which left the corporations with no assets, prior to the time respondent determined deficiencies against the corporations. Petitioners signed transferee agreement forms 2045 [5] in which it was stated that in consideration of respondent not issuing a statutory notice of deficiency to and making an assessment against the transferor corporations, petitioners admitted that they were transferees of assets received from said corporations, and assumed and agreed to pay the amount of any Federal income tax finally determined to be due and payable by the transferor corporations, to the extent of their *57 liabilities at law or in equity as transferees under section 6901 of the 1954 Code. Respondent disallowed the $25,000 surtax exemptions claimed by each of the various corporations under section 11 of the Code and allocated one $25,000 surtax exemption among all of the corporations. This resulted in determinations of deficiencies against the 11 unit corporations in which petitioners had an interest, and respondent issued notices of transferee liability to petitioners, pursuant to section 6901 of the Code, for the deficiencies in tax of the corporation to the extent of the amounts of cash received by petitioners as liquidating distributions from the unit corporations. The issues raised by the pleadings are whether respondent erred in disallowing the surtax exemptions to the corporations, and allocating only one surtax exemption among them, and whether petitioners are liable as transferees for any resulting deficiencies in income tax of the 11 unit corporations. In his notices *58 of transferee liability issued to petitioners respondent cited sections 269, 482, and 1551 of the 1954 Code as authority for the disallowance of the surtax exemptions and the allocation of one surtax exemption, but on brief respondent relies primarily on section 269, and properly so, we believe. See Kessmar Construction Company v. Commissioner, 336 F. 2d 865. In their petitions in several of the docket numbers with respect to corporate tax liabilities for fiscal years ending in 1957 petitioners pleaded the statute of limitations as a bar to their transferee liability, but no evidence was presented with respect to this plea and it was not argued on brief, so we assume that petitioners have abandoned the plea. We consider first, but only briefly, the issue of transferee liability raised by the pleadings. While petitioners alleged in their petitions that they are not transferees as defined by law, and appear to have offered some evidence indicating that the corporations were not insolvent at the time some of the distributions were made to petitioners, petitioners do not argue the issue of transferee liability on brief. Consequently, we do not know what their arguments might be in support *59 of the allegations in their petitions. Sections 6901 and 6902 of the 1954 Code neither create nor define substantive transferee liability but merely provide a procedure by which the Government may collect unpaid taxes against transferees. The existence and extent of a transferee's liability must be determined under State law. Commissioner v. Stern, 357 U.S. 39. We have been cited no Illinois statutory law fixing the liability of the stockholders receiving liquidating distributions from a corporation for unpaid taxes of the corporation, and we have found none. We assume that the courts of Illinois, where these transfers took place, would follow the equitable trust fund theory adopted by Federal decisional law which would permit creditors of an insolvent corporation to recover the debts of the corporation from stockholders to the extent of the assets of the corporation distributed to the stockholders at a time when the corporation was insolvent. See Singer v. Hutchinson, 183 Ill. 606, 56 N.E. 388; Clarkson v. Erie and North Shore Dispatch, 6 Ill. App. 284. This generally requires proof by the respondent (1) that the assets were transferred by the corporation to the transferee without *60 adequate consideration, (2) that the corporation was insolvent or that the transfer left the corporation insolvent, (3) that the assets had value and what that value was on the date of the transfer, and (4) that respondent has made every reasonable effort to collect the sums due from the transferor. See Bartmer Automatic Self Service Laundry, Inc., 35 T.C. 317. We find the evidence on the whole sufficient to support respondent's burden of proof on this theory. Furthermore, this Court has held that where the purported transferees have executed transferee agreements similar to those executed by petitioners here, they become liable as transferees at law. Turnbull, Inc., 42 T.C. 582, on appeal (C.A. 5, Sept. 16, 1964). There is no question that assets were transferred to petitioners without consideration. They admit as much in the transferee agreements and the stipulation of facts, and respondent also offered undisputed evidence of the fact. Nor is there any question of the value of the assets received. The evidence is undisputed that the distributions were in cash and as to the amounts thereof. Petitioners offered the testimony of their accountant to indicate that if the entire single *61 surtax exemption were allocated among these 11 unit corporations in the manner he determined, most of the corporations would not have been insolvent at the time the first liquidating distributions were made. The answer to this is that the Commissioner may prove that the transfer was one of a series of distributions in liquidation which resulted in insolvency; and it is clear that when the tax deficiencies determined by respondent are taken into consideration, which should be done, the distributions resulted in making the corporations insolvent. Bennett E. Meyers, 21 T.C. 331. The undisputed evidence is that the corporations were all liquidated and dissolved and distributed all of their assets, consisting of cash, in liquidation. In addition, where transferee liability is asserted at law, it is not necessary for respondent to prove that the transferor was insolvent. Turnbull, Inc., supra.See also Kamen Soap Products Co. v. Commissioner, 230 F. 2d 565. Under these circumstances, issuance of a deficiency notice to the transferors is not a prerequisite to issuing notices to the transferees; nor is it necessary for respondent to proceed against the transferors first in an effort to *62 collect the tax where such an effort would be futile. Henry A. Kuckenberg, 35 T.C. 473, affirmed on this issue 309 F. 2d 202, certiorari denied 373 U.S. 909; W. W. Cleveland, 28 B.T.A. 578, affirmed sub nom. Flynn v. Commissioner, 77 F. 2d 180. Respondent's forbearance in issuing statutory notices to the transferor corporations is sufficient consideration in law to support the transferees' promise to pay the taxes due. Turnbull, Inc., supra. In short, we find the evidence is sufficient to carry respondent's burden of proving that petitioners are transferees of the property of the taxpayer corporations, as required by section 6902, at both equity and law. We conclude that petitioners are liable as transferees for any taxes finally determined to be due from the corporations to the extent of the liquidating distributions they received from the respective corporations. The primary issue is whether respondent erred in disallowing the surtax exemptions claimed by each of the corporations on their returns, and allocating only one surtax exemption among all of the corporations in the manner that he did. In determining the tax liability of the 11 unit corporations here involved, *63 respondent allocated the one $25,000 surtax exemption equally between 6 of these 11 unit corporations for their fiscal years ending in 1957; he allocated $24,000 of the surtax exemption to 1 of the 11 unit corporations and the remaining $1,000 to 1 of the corporations in which these petitioners had no interest for their fiscal years ending in 1958; and he allocated $10,000 of the surtax exemption to 1 of the 11 unit corporations and the remaining $15,000 to 1 of the corporations in which petitioners had no interest for their fiscal years ending in 1959. Unfortunately, the record is bare of any very satisfactory explanation of why the one surtax exemption was allocated in this manner, particularly for the years 1957 and 1958. While such a record does not provide the Court with all the evidence it would prefer to have in deciding this issue, nevertheless section 269 gives the Commissioner rather broad discretion in disallowing and allocating deductions, credits, and other allowances, Kessmar Construction Company v. Commissioner, supra, and where a transferee resists imposition of liability on the grounds that the taxes sought to be collected are not owed by the transferor, he has the *64 burden of proving wherein the Commissioner's determination thereof was wrong. Sec. 6902, I.R.C. 1954; Henry A. Kuckenberg, supra.
Section 269(a)[6] *65 *66 provides that if any person acquires control of a corporation and the principal purpose for which such acquisition was made is evasion or avoidance of income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then respondent may disallow such deduction, credit, or other allowance; subsection (b)(1) further authorizes respondent, in any case to which subsection (a) applies, to allow as a deduction, credit, or allowance any part of any amount disallowed by subsection (a), and subsection (b)(2) authorizes him to distribute, apportion, or allocate such deductions, credits, or allowances among corporations, if he determines that such allowance will not result in evasion or avoidance of the tax. The formation of a new corporation for the proscribed purpose has been held to be acquisition of control within the meaning of this statute, Joe (Joseph Dillier), 41 T.C. 762, on appeal (C.A. 9, Apr. 12, 1965); James Realty Company v. United States, 280 F. 2d 394; and the statute authorizes the disallowance of surtax exemptions and the allocation of one surtax exemption among related corporations. Kessmar Construction Company v. Commissioner, supra; James Realty Company v. United States, supra. We conclude that respondent was acting within the authority granted him under section 269, provided the principal purpose of forming the unit corporations was evasion or avoidance of income tax by securing the benefit of the additional surtax exemptions, and provided respondent's determination was not unreasonable, arbitrary, or capricious. In order to meet their burden of proving that the principal purpose for forming the unit corporations was not to obtain the additional surtax exemptions, petitioners claim that the multiple corporations were formed for sound business reasons. The main thrust of petitioners' *67 argument is that in 1950 Joseph was involved in a large real estate development which was undertaken by a single corporation and that he lost a lot of money on the venture because the one corporation was at the mercy of material suppliers, labor unions, governmental agencies, etc., and that he thereafter decided he would never again enter into a large real estate venture using only one corporation. His purported reasoning was, generally, that if separate corporations were formed to build and sell a limited number of houses, each corporation could enter into separate contracts with different suppliers, so if there was a price rise or a shortage of materials the entire operation would not be jeopardized; that if labor union locals struck one corporation this would not necessarily stop work by the other corporations; that if liens were filed against one corporation, they would not be effective against all of the property; and that if each corporation was utilized to build and sell only a few houses and then liquidate, it would not tie up the capital invested for an extended period until the whole project was completed. These and similar arguments have been advanced in numerous so-called *68 "multiple corporation" cases without convincing the courts that they were the principal reasons for utilizing a sufficient number of corporations to keep the taxable income of all of them below $25,000. See Aldon Homes, Inc., 33 T.C. 582; Shaw Construction Co., 35 T.C. 1102, affd. 323 F. 2d 316; Kessmar Construction Co., 39 T.C. 778, affd. 336 F. 2d 865, for a discussion of these arguments. We do not doubt that some of these reasons represent a sound business judgment for use of more than one corporation, or that Joseph suffered an unfortunate experience in 1950 which made him wary of operating with only one corporation. But we are not convinced by the evidence that these were the principal reasons for utilizing 90 separate corporations in his real estate enterprise. Petitioners have offered no evidence that a single corporation could not have contracted with several different suppliers to obtain materials; or could not have entered into several subcontracts with different subcontractors to do paving, electrical, etc., work on the project. What evidence we do have on this subject, aside from Joseph's testimony about his prior experience, indicates that Joseph either owned or *69 had a substantial interest in many of the companies that furnished supplies and performed subcontracts on this project. Nor are we convinced, for example, that if a labor union struck the project being built by one of the corporations the strike would not be effective to interrupt the work being done on the adjacent houses simply because they were being built by another corporation owned by the same individuals. Petitioners distinguish Aldon Homes, Inc., supra, and Shaw Construction Co., supra, on the grounds that those cases involved elaborate devices, transparent and lacking in good faith, wherein the multiple corporations actually did nothing to earn a share of the profits. We agree that those cases are distinguishable because there we found the multiple corporations were shams and taxed all the income to the taxpayer who earned it, whereas here the respondent has recognized the viability of each of the corporations and has made no effort to reallocate income or expenditures. But that does not mean that some of the principles established in those cases are entirely inapplicable to the issue here. See Kessmar Construction Co., supra; Joe (Joseph) Dillier, supra. Petitioners *70 argue that here each of the corporations acquired title to the lots and, having built on them, sold them, that each entered into separate contracts for materials and supplies, that each kept separate books and records, and that each took a conventional profit on the construction and sale of the houses. The evidence is quite meager as to all of these points except it is stipulated that each corporation kept separate books. But more important in this case, the evidence is also meager as to who actually built the houses. It is stipulated that the houses in the entire subdivision were constructed on a mass production basis, that is, construction was initiated on a particular street within a subdivision and work progressed lot by lot until the entire tract was completed. The entire project was advertised as one subdivision without mention of the separate corporations. The corporate address of all 90 corporations was the same and one general office staff handled the books of all the corporations. No reasonable explanation was given as to why each corporation was designated to build 14 to 18 houses. We can only surmise this was done in order to keep the taxable income of each corporation *71 below $25,000, which could have been calculated fairly well either in advance or as the work progressed, and which in fact occurred, at least with the corporations about which we have any evidence. [7]
In cases like this it is difficult to obtain direct evidence of the principal purpose for forming numerous corporations to construct a single subdivision. But absent rather convincing evidence that it was done for some sound business reason other than saving taxes, it is only reasonable and practical to believe that the principal purpose was to obtain the advantage of numerous surtax exemptions. See James Realty Company v. United States, supra.In addition, respondent's determination of the substantive tax liability of the transferor corporations is presumptively correct and the burden is on petitioners to show that it is in error. We are not convinced by the evidence presented that respondent erred in applying section 269 in the instant case. Petitioners also claim that respondent was arbitrary and capricious in allocating the one $25,000 surtax exemption in the manner he did. The entire $25,000 surtax *72 exemption was allocated among the unit corporations in which petitioners had an interest for fiscal 1957 and all of it offset taxable income. $24,000 of the surtax exemption was allocated among these 11 unit corporations for fiscal 1958 and offset taxable income. For fiscal 1959 only $10,000 of the exemption was allocated among these 11 unit corporations and offset taxable income. It is obvious that if the entire amount allocated to the 11 unit corporations all offset taxable income it would make little or no difference taxwise whether it was all allocated to one corporation or divided among all 11 unit corporations. [8] This seems to be the explanation given by respondent's agent for allocating the entire $10,000 to only 1 of the 11 unit corporations for 1959, at least. Thus, if only one surtax exemption is allowable, petitioners can only complain that the entire $25,000 was not allocated to 1 or more of these 11 unit corporations in which they had an interest for the fiscal years ending in 1958 and 1959. As stated earlier, we have no clear explanation of why the allocation was made by respondent in the above manner. The agent *73 who made the allocations for 1957 and 1958 was not called to testify. The agent who made the allocation for 1959 was offered as a witness by respondent, but it is difficult to determine from his testimony just why he allocated only $10,000 of the exemption to these 11 unit corporations for 1959. The best we can understand from his testimony is that he was allocating the one exemption among the entire group of 90 corporations and felt that an allocation of 40 percent of the entire exemption to the group in which petitioners had an interest was fair and reasonable. We doubt that this is a very sound basis for making the allocation, but petitioners have offered no evidence to support their claim that the entire exemption should be allocated to their unit corporations. A more reasonable basis for making the allocation might be on the ratio of income of one corporation to the total income, or the ratio of business conducted by one corporation to the business conducted by the entire group - but we have no evidence upon which such a determination could be made. For all we know from the record respondent's allocation of the one surtax exemption may have been eminently reasonable and fair for *74 each of the years involved. Petitioners have failed to prove that it was arbitrary, capricious, or unreasonable. Consequenty, it must be sustained. We have decided the issues in favor of respondent, but because there appear to have been possible operating loss carrybacks that were not taken into consideration in respondent's determinations of the corporate tax liabilities. Decisions will be entered under Rule 50. Footnotes
1. Proceedings of the following petitioners are consolidated herewith: Samuel Napsky (Alleged Transferee), docket Nos. 5217-63 - 5222-63; Morley Brickman, Transferee of Unit "219" Lawrence Avenue Highlands, Inc., Transferor, docket No. 5237-63; Morley Brickman, Transferee of Unit "220" Lawrence Avenue Highlands, Inc., Transferor, docket No. 5238-63; Morley Brickman, Transferee of Unit "221" Lawrence Avenue Highlands, Inc., Transferor, docket No. 5239-63; Morley Brickman, Transferee of Unit "222" Lawrence Avenue Highlands, Inc., Transferor, docket No. 5240-63; Morley Brickman, Transferee of Unit "223" Lawrence Avenue Highlands, Inc., Transferor, docket No. 5241-63; Morley Brickman, Transferee of Unit "224" Lawrence Avenue Highlands, Inc., Transferor, docket No. 5242-63; Morley Brickman, Transferee of Unit "225" Lawrence Avenue Highlands, Inc., Transferor, docket No. 5243-63; Morley Brickman (Alleged Transferee), docket Nos. 831-64 - 841-64; and Samuel Napsky (Alleged Transferee), docket Nos. 842-64 - 852-64.↩
1. In docket No. 5240-63 the transferee liability for petitioner Morley Brickman is stated in the deficiency notice as $2,401.79.↩
1. Per stipulation.↩
2. Unless otherwise noted, the term "unit corporations" will refer only to the 11 unit corporations involved in this proceeding, viz., 22 and 23, Brickman Home Builders, Inc., and 219 through 227, Lawrence Avenue Highlands, Inc.↩
3. It appears from the record in these proceedings that respondent did not obtain a 2045 agreement from petitioner Samuel Napsky in docket Nos. 851-64; 5217-63; 5219-63; 5220-63; 5222-63; and from petitioner Morley Brickman, in docket Nos. 5238-63; 5240-63; 5241-63; 5242-63; 5243-63. Transferee agreements from the petitioners in all other docket numbers were stipulated into the record. ↩
4. Joseph Brickman is not a party in these proceedings and it is not clear what steps, if any, respondent has taken against him to collect the deficiencies in tax determined to be due from these corporations. However, respondent may proceed against any one of the transferees of a taxpayer to collect the tax imposed on the taxpayer to the extent of the assets received by him, and other transferees need not be joined in the proceeding. Phillips v. Commissioner, 283 U.S. 589↩.
5. As noted in fn. 3 to the findings of fact, transferee agreements signed by these petitioners with respect to the tax liability of some of the corporations for some of the periods involved were not offered in evidence.↩
6. SEC. 269. ACQUISITIONS MADE TO EVADE OR AVOID INCOME TAX. (a) In General. - If - (1) any person or persons acquire, or acquired on or after October 8, 1940, directly or indirectly, control of a corporation, or * * *
and the principal purpose for which such acquisition was made is evasion or avoidance of Federal income tax by securing the benefit of a deduction, credit, or other allowance which such person or corporation would not otherwise enjoy, then such deduction, credit, or other allowance shall not be allowed. * * * (b) Power of Secretary or His Delegate To Allow Deduction, Etc., in Part. - In any case to which subsection (a) applies the Secretary or his delegate is authorized - (1) to allow as a deduction, credit, or allowance any part of any amount disallowed by such subsection, if he determines that such allowance will not result in the evasion or avoidance of Federal income tax for which the acquisition was made; or (2) to distribute, apportion, or allocate gross income, and distribute, apportion, or allocate the deductions, credits, or allowances the benefit of which was sought to be secured, between or among the corporations, or properties, or parts thereof, involved, and to allow such deductions, credits, or allowances so distributed, apportioned, or allocated, but to give effect to such allowance only to such extent as he determines will not result in the evasion or avoidance of Federal income tax for which the acquisition was made; or (3) to exercise his powers in part under paragraph (1) and in part under paragraph (2).
7. It does appear that unit 227 had net income of $26,811.02 for its fiscal year 1958.↩
8. Except possibly for petitioners' argument about insolvency.↩